Richard Duane BRADLEY,
Defendant–Appellant,

v.

STATE of Indiana, Plaintiff–Appellee.

No. 48S00–9305–CR–512.

Supreme Court of Indiana.

March 30, 1995.

William Byer, Jr., Byer & Byer, Anderson, for appellant.

Pamela Carter, Atty. Gen., Arthur Thaddeus Perry, Deputy Atty. Gen., Indianapolis, for appellee.

### Direct Appeal

DICKSON, Justice.

Following a jury trial, the defendant-appellant, Richard Duane Bradley, was convicted of murder, Ind.Code § 35–42–1–1(1); felony murder, Ind.Code § 35–42–1–1(2); and robbery, Ind.Code § 35–42–5–1. The felony-murder count was merged with the murder conviction and the defendant was sentenced thereon to a period of sixty years. In addition, he was sentenced to a consecutive term of twenty years for the robbery conviction. Although the State sought the death penalty, the jury recommended against death.

This direct appeal presents issues concerning the following subjects: 1) jury venire; 2) juror challenges; 3) jurisdiction pending bail appeal; 4) sufficiency of the evidence; 5) an alleged evidentiary harpoon; and 6) change of venue.

The convictions arise out of a December 5, 1990, robbery and homicide at a Phillips 66 service station at the intersection of Interstate Highway 69 and State Road 9 in Madison County, resulting in the death of Paul Weaver, the service station attendant.

### 1. Jury Venire

The defendant contends that the venire, chosen solely from a list of registered voters in Madison County, was improper and that other sources of potential jurors should have been utilized. We understand the defendant's argument to be that the venire was improperly selected for two reasons: (1) the selection process failed to include, in addition to registered voters, citizens named on the "latest tax duplicate and the tax schedules of the county," as required by Indiana Code section 33–4–5–2(a),[1] and (2) it failed to supplement these sources with names from other lists as permitted by Indiana Code section 33–4–5–2(d).[2] At trial, the defendant expressly challenged the venire selection process, claiming "clear violation of the statutory procedure," Record at 246, and presented evidence to establish that the county jury commissioners use an automated computer system that randomly selects potential jurors using only the voter registration list. Rec-

---

1. Indiana Code § 33–4–5–2(a) provides in part:

 The commissioners shall immediately, from the names of legal voters and citizens of the United States on the latest tax duplicate and the tax schedules of the county, examine for the purpose of determining the sex, age, and identity of prospective jurors, and proceed to select and deposit, in a box furnished by the clerk for that purpose, the names, written on separate slips of paper of uniform shape, size, and color, of twice as many persons as will be required by law for grand and petit jurors in the courts of the county, for all the terms of such courts, to commence with the calendar year next ensuing.

 Indiana Code § 33–4–5–2(c) provides in part: Subject to appropriations made by the county fiscal body, the jury commissioners may utilize a computerized jury selection system. However, the system utilized for the selection system must be fair and may not violate the rights of persons with respect to the impartial and random selection of prospective jurors. The jurors selected under the computerized jury se-

lection system must be eligible for selection under this chapter.

2. Indiana Code §§ 33–4–5–2(d)–(e) state:

 (d) The jury commissioners may supplement voter registration lists and tax schedules under subsection (a) with names from lists of persons residing in the county that the jury commissioners may designate as necessary to obtain a cross section of the population of each county commissioner's district. The lists designated by the jury commissioners under this subsection must be used for the selection of jurors throughout the entire county.

 (e) The supplemental sources designated under subsection (d) may consist of such lists as those of utility customers, persons filing income tax returns, motor vehicle registrations, city directories, telephone directories, and driver's licenses. These supplemental lists may not be substituted for the voter registration list. The jury commissioners may not draw more names from supplemental sources than are drawn from the voter registration lists and tax schedules.

ord at 727. The defendant asserts that jury selection systems should draw from a fair cross-section of the community and that exclusive reliance upon a voter registration list in the present case excluded from potential jury service a sizeable non-voting segment of the population. This requires us to decide whether the statute requires counties to utilize both voter registration lists and tax lists as sources for potential jurors. The defendant further argues that the "inferred purpose" of subsection (d) is to broaden the base of potential jurors, which should have been achieved in this case by supplementing voter registration lists with names drawn from other sources.

In *Lambert v. State* (1994), Ind., 643 N.E.2d 349, we recently addressed a claim of error in the failure to use both voter registration lists and tax schedules as sources for drawing potential jurors. *Id.* at 352. Summarizing the appellant's position as concluding that henceforth the use of both voter registration lists and tax schedules was required, we did not expressly address that issue but rather found no error because there was no showing that property owners were excluded. *Id.* In contrast, because the record in the present case demonstrates that only the voter registration lists were used, the question of whether both lists must be used is now squarely presented.

We first note that minor irregularities in compliance with juror selection statutes will not amount to reversible error. *Owen v. State* (1979), 272 Ind. 122, 125, 396 N.E.2d 376, 379; *State ex rel. Burns v. Sharp* (1979), 271 Ind. 344, 348, 393 N.E.2d 127, 130. Where the selection system used is impartial and not arbitrary, substantial compliance with the statutory requirements has been held to be sufficient. *Wireman v. State* (1982), Ind., 432 N.E.2d 1343, 1348, *cert. denied*, 459 U.S. 992, 103 S.Ct. 350, 74 L.Ed.2d 389; *State ex rel. Burns*, 271 Ind. at 348, 393 N.E.2d at 130; *Shack v. State* (1972), 259 Ind. 450, 459, 288 N.E.2d 155, 162. As noted in *Lambert*, many property owners are also registered voters. *Lambert*, 643 N.E.2d at 352. We find that, even if the statute is read to require both voter registration and tax lists to be used as sources for

potential jurors, the omission of the latter will not render the process invalid. Rather, substantial compliance would be found.

Our decision today, however, need not rest on substantial compliance. The juror selection process described by Indiana Code section 33-4-5-2, considering all of its subsections (variously enacted at different times), is not altogether clear. Subsection (a) states that prospective jurors are to be chosen from the legal voters and the tax lists; subsection (c) authorizes random computer selection from among persons "eligible for selection under this chapter"; subsection (d) permits the jury commissioners to "supplement voter registration lists and tax schedules"; and subsection (e), which designates possible supplemental lists, provides that such lists "may not be substituted for the voter registration list," but then proceeds to limit the total number of names from supplemental sources to the aggregate total from both voter registration lists and tax schedules. To harmonize these provisions and provide a single, consistent interpretation, we find applicable our decision in *State ex rel. Brune v. Vanderburgh Circuit Court* (1971), 255 Ind. 505, 265 N.E.2d 524. In that case, notwithstanding then-existing statutory language very similar to the present wording, requiring jury commissioners to select names from voter and tax lists, this Court unanimously approved a system relying only upon voter registration lists because 1969 changes in property tax law removing owners of automobiles from the property tax roles had thereby rendered the use of tax duplicates and schedules not representative of a cross-section of citizens as required for jury selection lists by federal constitutional law.

We conclude that the computerized selection of potential jurors from voter registration lists alone, without the additional use of tax lists, is adequate to satisfy the statutory requirements.

 As to the defendant's claim of error in failing to utilize other sources for potential jurors, as permitted by statute, we recognize that the statutory venire selection process must comport with constitutional considerations relating to equal protection and the right to trial by an impartial jury. Absent

constitutional infirmity, however, we decline to construe the statute so as convert an option into a mandate.

The Equal Protection Clause of the Fourteenth Amendment may provide one constitutional basis, in cases where purposeful discrimination can be shown, on which to challenge any stage of the jury selection process. *See Batson v. Kentucky* (1986), 476 U.S. 79, 88, 106 S.Ct. 1712, 1718, 90 L.Ed.2d 69, 82, *modified by Powers v. Ohio* (1991), 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411. Because the defendant does not raise an equal protection challenge, we need not undertake an equal protection analysis here.

■ The United States Supreme Court has long held that "the selection of a petit jury from a representative cross section of the community is an essential component of the Sixth Amendment right to a jury trial."[3] *Taylor v. Louisiana* (1975), 419 U.S. 522, 528, 95 S.Ct. 692, 697, 42 L.Ed.2d 690, 697. While petit juries must be drawn from a source "fairly representative of the community," there is no requirement that they "actually ... mirror the community and reflect the various distinctive groups in the population." *Id.* at 538, 95 S.Ct. at 702, 42 L.Ed.2d at 703. Defendants "are not entitled to a jury of any particular composition," but venire selection systems "must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof." *Id.*

In order to make a *prima facie* showing that there has been a violation of the fair-cross-section requirement, a defendant must demonstrate:

(1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Duren v. Missouri* (1979), 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579, 587. Once a *prima facie* case has been made, the state has the burden to demonstrate that "those aspects of the jury-selection process ... that result in the disproportionate exclusion of a distinctive group" manifestly and primarily advance "a significant state interest." *Id.* at 367–68, 99 S.Ct. at 670, 58 L.Ed.2d at 589.[4]

Indiana has previously expressed general approval of the use of voter registration lists for the selection of prospective jurors:

There must be a practical method of choosing prospective jurors. The use of lists, whether they be property taxpayers or registered voters, so long as they represent a reasonable cross section of the people in the county, cannot be said to violate the rights of the accused, in the absence of showing that such use is made in a deliberate attempt to exclude certain groups from jury selection.

*Concepcion v. State* (1991), Ind., 567 N.E.2d 784, 788. As noted in *Concepcion*, proper use of such lists requires that they represent a reasonable community cross section.[5] A violation of the Sixth Amendment jury trial

3. The Sixth Amendment's requirement of a jury trial is made binding on the states by the Fourteenth Amendment. *Duncan v. Louisiana* (1968), 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491.

4. Notwithstanding any statements or inferences to the contrary in previous opinions of this Court, no finding of discriminatory purpose is required for a Sixth Amendment violation. Unlike in the equal protection context, where purposeful discrimination must be proven, *Batson*, 476 U.S. at 93, 106 S.Ct. at 1721, 90 L.Ed.2d at 85, "systematic disproportion itself demonstrates an infringement" of the defendant's fair-cross-section interest, *Duren*, 439 U.S. at 368 n. 26, 99 S.Ct. at 670 n. 26, 58 L.Ed.2d at 589 n. 26. The term "systematic" does not mean intentional but

simply "inherent in the particular jury-selection process utilized." *Id.* at 366, 99 S.Ct. at 669, 58 L.Ed.2d at 588.

5. U.S. Supreme Court Justice (now Chief Justice) Rehnquist, when ruling as Circuit Justice on a stay application, observed that whether such a selection procedure "can be described as 'systematically' excluding classes that do not register to vote in proportion to their numbers, and whether the need for efficient jury selection may not justify resort to such neutral lists as voter registration rolls even though they do not perfectly reflect population, are by no means open and shut questions under *Duren*." *California v. Harris* (1984), 468 U.S. 1303, 1304, 105 S.Ct. 1, 1, 82 L.Ed.2d 807, 808–09.

right may be found if the process used fails to yield a juror pool reflecting a reasonable cross-section of the community under the *Duren* test. *See U.S. v. Hatchett* (1994), 7th Cir., 31 F.3d 1411, 1426.

In the present case, the defendant fails to demonstrate a violation of the *Duren* standard.[6] We therefore decline to find that use of the Madison County voter registration list works to exclude systematically any particular group from jury selection. We find no error on this issue.

### 2. Juror Challenges

The defendant contends that the trial court erroneously granted the State's challenges of two African–American prospective jurors, Garrett Williams and Dorothy Davis.

In response to the State's exercise of a peremptory challenge to Garrett Williams, the defense objected, asserting that the State had failed to establish a race-neutral basis for the challenge. The trial court granted the peremptory challenge, finding it based upon a sustainable neutral reason related to the particular case.

The defendant contends that the trial court erroneously granted the State's challenge for cause as to Dorothy Davis. The defendant noted, for the record, that Mrs. Davis was an African–American potential juror. The State identified the potential juror's relationships with several anticipated important defense witnesses. During the State's voir dire of the prospective juror, testimony was elicited that she was acquainted with and had socialized with several of the defense witnesses. Record at 3235–39. She further indicated that the testimony of these defense witnesses "probably would affect [her] some" and that she might place more emphasis upon their testimony. Record at 3240.

On appeal, the defendant contends that he was denied a fair trial because potential jurors Williams and Davis were excluded due to their race.

 Peremptory challenges may not be exercised to achieve purposeful racial discrimination. *Batson*, 476 U.S. at 96, 106 S.Ct. at 1723, 90 L.Ed.2d at 87–88; *Phillips v. State* (1986), Ind., 496 N.E.2d 87, 88–89. For a criminal defendant to establish a *prima facie* case of purposeful racial discrimination in the selection of a jury, it must be shown that (1) the prosecutor has exercised peremptory challenges to remove members of a cognizable racial group[7] from the venire; and (2) the facts and any other relevant circumstances of the defendant's case raise an inference that the prosecutor used that practice to exclude venirepersons from the jury due to their race. *Batson*, 476 U.S. at 96, 106 S.Ct. at 1723, 90 L.Ed.2d at 87–88, *as modified by Powers*, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411. Once such a *prima facie* showing has been established, the burden shifts to the State to present an explanation for challenging such jurors. *Batson*, 476 U.S. at 97, 106 S.Ct. at 1723, 90 L.Ed.2d at 88. The trial court then has a duty to determine whether the defendant has established purposeful discrimination. *Id.* at 98, 106 S.Ct. at 1724, 90 L.Ed.2d at 88–89. Here the trial court's finding is accorded great deference. *Id.* at 98 n. 21, 106 S.Ct. at 1724 n. 21, 90 L.Ed.2d at 89 n. 21.

 In the present case, the State offered several reasons in support of its peremptory challenge of Mr. Williams: (1) the juror's acquaintance with a number of witnesses, some of whom would be called by the defense; (2) the juror's answers, which indicated that he did not believe in violence, a view seemingly incompatible with potential consid-

---

**6.** Although he points out that the number of people registered to vote in Madison County is smaller than the number of people living in the county, he does not allege that the non-voting population constitutes a "distinctive group in the community." While African–Americans may be considered a distinctive group, *see Lockhart v. McCree* (1986), 476 U.S. 162, 174–75, 106 S.Ct. 1758, 1765–66, 90 L.Ed.2d 137, 148–49, the defendant provides us only with the percentage (4.6) of African–American jurors who appeared

for his trial, and he does not demonstrate that African–Americans have been systematically excluded from the selection process.

**7.** While the defendant here is himself African–American, we have noted that, under *Powers*, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411, the law forbids any race-based exclusion of jurors, regardless of the defendant's race. *Holifield v. State* (1991), Ind., 572 N.E.2d 490, 493.

eration of the death penalty; and (3) the juror's employment responsibilities. We cannot conclude that the trial court abused its discretion in granting the State's peremptory challenge.

■ As to the State's challenge of Mrs. Davis as a potential juror, we note that the purpose of voir dire is to determine "whether prospective jurors can render a fair and impartial verdict in accordance with the law and evidence." *Emmons v. State* (1986), Ind., 492 N.E.2d 303, 305. Within the jury selection process, the challenge procedure has the purpose of ensuring a fair trial by an impartial jury. *Hart v. State* (1976), 265 Ind. 145, 151–52, 352 N.E.2d 712, 716. "The grant or denial of a challenge for cause to a prospective juror is within the trial court's discretion, which will be reversed only where the decision is illogical or arbitrary." *Willoughby v. State* (1990), Ind., 552 N.E.2d 462, 464. Under the facts presented, it was not illogical or arbitrary for the trial court to have granted the challenge for cause over the defense's objection.

### 3. Jurisdiction Pending Bail Appeal

■ The defendant contends that it was error for the trial court to assert its jurisdiction to proceed with trial while an appeal to this Court was pending. The defendant points out that on October 12, 1992, he filed a motion for release on bail, which, after a subsequent hearing, was denied by the trial court on October 21, 1992. The defendant then requested an interlocutory appeal as to the denial of bail, which the trial court found it unnecessary to rule upon, informing the defendant that he was free to pursue a regular appeal. On October 26, 1992, the defendant filed a praecipe for transcript of record and proceedings, filing the record on appeal with this Court on November 9, 1992. Trial commenced on November 11, 1992, at which time the defendant objected, asserting that the trial court was without jurisdiction due to the pending appeal as to bail.

The defendant contends, citing *Powers v. State* (1991), Ind.App., 579 N.E.2d 81, that when an action is pending in this Court, any action taken in the same cause by the lower court is void for lack of jurisdiction. We note

that an appeal of a conviction or final judgment has the effect of transferring general jurisdiction of a case to the appellate court, thereby suspending any further trial court jurisdiction over the action. Ind.Appellate Rule 3(A). *See Bright v. State* (1972), 259 Ind. 495, 289 N.E.2d 128 and *Stephenson v. State* (1932), 205 Ind. 141, 179 N.E. 633. However, there are situations in which a trial court may retain jurisdiction and act notwithstanding an appeal. For example, the trial court may proceed during an interlocutory appeal of an order deciding a question of improper venue. Ind.Trial Rule 75(E). The trial court may also retain jurisdiction to perform other tasks, such as reassessing costs, correcting the record, or enforcing the judgment, *State ex rel. Fairchild v. Criminal Court* (1952), 230 Ind. 307, 309, 103 N.E.2d 352, 352, although a trial court "is not permitted to intermeddle with the subject-matter of the appeal." *Id.* at 309, 103 N.E.2d at 353.

The denial of bail is deemed a final judgment appealable immediately, without waiting for the final judgment following trial. *Bozovichar v. State* (1952), 230 Ind. 358, 103 N.E.2d 680. This is so because it is "entirely independent of the issues to be tried." *Id.* at 363, 103 N.E.2d at 682. The rationale supporting an immediate appeal from the denial of bail simultaneously authorizes the trial court to proceed with trial during the pendency of such appeal. Such proceeding does not constitute intermeddling with the bail appeal. We decline to hold that an appeal from the denial of bail impinges the jurisdiction of the trial court to proceed.

### 4. Sufficiency of the Evidence

The defendant argues that his convictions were not supported by sufficient evidence. His claim is essentially a challenge to the credibility of the two initial co-defendants and an incarcerated informant whose testimony the defendant characterizes as inconsistent and inherently incredible.

■ An appellate claim of insufficient evidence will prevail if, considering the probative evidence and reasonable inferences which support the judgment, and without

weighing evidence or assessing witness credibility, we conclude that no reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. *Case v. State* (1984), Ind., 458 N.E.2d 223, 226; *Loyd v. State* (1980), 272 Ind. 404, 407, 398 N.E.2d 1260, 1264, *cert. denied,* 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105. A reviewing court, after hearing testimony and assessing the truth and veracity of each witness, will disturb the jury's verdict only when such decision is based upon testimony that is inherently improbable. *Johnson v. State* (1991), Ind., 580 N.E.2d 670, 671.

■ Co-defendant Anthony Nunn testified that the defendant said he needed money and spoke of a place that he "needed" to rob, asked if there were a gun present in Nunn's home, and later took possession of the loaded handgun. Nunn further testified that he entered the gas station convenience store with the defendant; that the defendant approached the cashier and pointed the gun at him; and that, while Nunn was standing in the back of the establishment, two shots were fired.

Co-defendant Jeffrey Cottrell testified that upon arrival at the gas station convenience store, the defendant commented, in reference to the store attendant, "I should rob this man." Record at 4136. Cottrell also stated that after the defendant and Nunn entered the store, Cottrell heard gunshots, and that upon returning to the car, the defendant declared that he had just shot a man. Record at 4139. According to Cottrell, the defendant admitted taking about $500.

A fellow inmate of the defendant testified that the defendant, prior to trial, expressed concern about the possibility that Cottrell may have made incriminating statements about the defendant. Record at 3860. This witness also testified that the defendant stated that "as long as [Cottrell and Nunn] kept their mouths shut, they'd be all right." Record at 3863. The inmate also related that the defendant told him that he and Nunn entered the gas station to rob the place and that the defendant shot the attendant twice. Record at 3865.

We do not find such evidence, despite the defendant's claims of its inconsistency with other evidence, to be inherently improbable. This evidence would enable a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt.

### 5. Evidentiary Harpoon

The defendant contends that the trial court erred in denying his motion for mistrial after Detective Cummings of the Anderson Police Department testified, stating the names of five persons who had provided him with the defendant's name in the course of his investigation. The defendant argues that Cummings's testimony violated a motion in limine granted by the trial court under which any statements made by third parties who would not testify at trial or who were not included on the State's witness list would be excluded at trial. The defendant also asserts that this testimony was inconsistent with earlier testimony indicating that one of the five persons mentioned by Cummings had revealed the identities of co-defendants Nunn and Cottrell but not that of the defendant. The defendant argues that despite the trial court's instruction that the witness had misunderstood the question asked of him and had misspoken, and that the jury should therefore disregard the witness's testimony as to the five names, the jury was nevertheless influenced by improper testimony, a matter of reversible error.

■ Because the trial court is in the best position to evaluate the relevant circumstances of an event and its impact on the jury, the trial court's determination of whether to grant a mistrial is afforded great deference on appeal. *Schlomer v. State* (1991), Ind., 580 N.E.2d 950, 955. To succeed on appeal from the denial of a motion for mistrial, the appellant must demonstrate the statement or conduct in question was so prejudicial and inflammatory that he was placed in a position of grave peril to which he should not have been subjected. *Gregory v. State* (1989), Ind., 540 N.E.2d 585, 589. Mistrial is an extreme remedy invoked only when no other measure can rectify the perilous situation. *Schlomer,* 580 N.E.2d at 955. We determine the gravity of the peril based upon the probable persuasive effect of the miscon-

duct on the jury's decision rather than upon the degree of impropriety of the conduct. *Gregory,* 540 N.E.2d at 589. Moreover, reversible error is seldom found when the trial court has admonished the jury to disregard a statement made during the proceedings. *Davidson v. State* (1991), Ind., 580 N.E.2d 238, 241.

The trial court recognized, in a hearing out of the jury's presence, that three of the five names Detective Cummings supplied in his testimony were improperly relayed. We note that, after reconvening the jury, the trial judge admonished the jury to disregard the prior question posed to Cummings as well as his response. The trial judge then further instructed the jury that in a hearing outside its presence it was discovered that Cummings had misunderstood the question and that his answer reflected a misstatement. Subsequently, over defense counsel's hearsay objection to a question posed to Cummings as to who provided him with the defendant's name before the defendant's arrest, the court allowed the question, instructing the jury that the answer was to be construed as showing only why the witness acted and was not to be construed for the truth or falsity of its content. This time, Cummings' response offered only the names of the two co-defendants. Record at 3665.

These circumstances reveal that the trial court undertook measures first to determine whether error may have occurred and second to rectify the discovered error. The trial court clearly instructed the jury as to the discovery of error and the reason for its existence, as well as admonishing the jury to limit its consideration of the witness's amended response. Here, the trial court's exercise of discretion in implementing a corrective measure was both effective and less extreme than a declaration of mistrial. Moreover, the defendant's conclusion that "the record does not establish that the jury was not improperly influenced by the improper testimony of Detective Cummings," Brief of Appellant at 40, misstates the applicable standard of review in disposing of this allegation of error. The defendant does not meet the requisite burden of demonstrating that he was placed in a position of grave peril by the probable persuasive effect of the testimony on the jury's decision.

### 6. Change of Venue

The defendant contends that the trial court erred in denying his Motion for Change of Venue. The defendant's motion contended that publicity surrounding the case was so prejudicial as to deny him a fair trial. In support of the motion, defense counsel submitted numerous exhibits, including such items as newspaper articles, reader surveys, radio broadcast transcripts, television news tapes, information concerning newspaper circulation, radio station listenership, and a study of Madison County residents' familiarity with various aspects of the case. The defendant maintains that such coverage within Madison County was so extensive as to constitute widespread inflammatory pre-trial publicity. As a result, the defendant claims that such prejudice engendered in jurors such a preconceived notion of his guilt that the trial court committed reversible error in failing to sustain the motion.

We will undertake review of a trial court's decision on a motion for change of venue only for an abuse of discretion. *Davidson,* 580 N.E.2d at 244. A change of venue will not be granted upon the mere possibility of prejudice; it is the defendant's burden to demonstrate jurors' inability to disregard preconceived notions of guilt and render a verdict based on the evidence. *Id.* "At the heart of the decision on a motion for change of venue is the right to an impartial jury." *Id.* (quoting *Lindsey v. State* (1985), Ind., 485 N.E.2d 102, 106). A motion for change of venue need not be granted where voir dire reveals that potential jurors are able to set aside preconceived notions of guilt and render a verdict based solely on the evidence. *Lindsey,* 485 N.E.2d at 106.

In the case before us, extensive voir dire was conducted during which all potential jurors were queried as to their ability to serve as fair and impartial jurors. Potential jurors also were questioned about their exposure to pre-trial publicity. Each of the impaneled jurors indicated they could function impartially to render a verdict based solely

upon the evidence presented at trial. We find no abuse in the denial of this motion.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, SULLIVAN and SELBY, JJ., concur.