Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 13 2013, 5:41 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ANA M. QUIRK**
Public Defender
Muncie, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GEORGE P. SHERMAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

BILLY BULU GERCILUS,              )
                                  )
    Appellant-Defendant,         )
                                  )
        vs.           )     No. 18A02-1303-CR-246
                                  )
STATE OF INDIANA,                 )
                                  )
    Appellee-Plaintiff.          )

APPEAL FROM THE DELAWARE CIRCUIT COURT
The Honorable Thomas A. Cannon, Jr., Judge
Cause No. 18C05-1208-FD-135

**November 13, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Billy Bulu Gercilus appeals his convictions for two counts of battery resulting in bodily injury, as Class D felonies, and one count of interference with reporting a crime, a Class A misdemeanor, following a jury trial. Gercilus presents the following issues for review:

1. Whether the trial court erred when it overruled Gercilus' objection to the jury panel.

2. Whether the trial court abused its discretion when it refused Gercilus' request to instruct the jury on lesser included misdemeanor batteries.

3. Whether the evidence is sufficient to support Gercilus' conviction for interference with the reporting of a crime.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On July 23, 2012, Gercilus was residing in Muncie with Claudette Lawson and her thirteen-year-old son, D.W., in a two-bedroom apartment. Lawson and Gercilus were dating and shared one bedroom, while D.W. used the other bedroom. Lawson and Gercilus argued that day because Lawson was financially supporting them while Gercilus "always wanted to go to the bar and get drunk[.]" Transcript at 74-75. Gercilus left for a bar anyway, and Lawson stayed home.

When Gercilus returned later that evening, Lawson and D.W. were in their respective bedrooms. Lawson was trying to sleep, but Gercilus was loud, turned on the light, and wanted to have sex with Lawson. Lawson refused, and Gercilus left for the bar again. A short time later, Lawson and D.W. went for a walk. When they returned to the

2

apartment, they found Gercilus there with three other people. Gercilus attempted to prevent Lawson from entering their bedroom, but she pushed through. In the bedroom she saw "two guys and a female" sitting on the bed. Id. at 77. Lawson ordered the three strangers out of the apartment. Gercilus tried unsuccessfully to get them to return.

When the strangers did not return, Gercilus and Lawson began to argue in the hallway. Gercilus started "cussing [Lawson] out because [she] had them to leave [sic]." Id. at 81. Gercilus followed Lawson into the bedroom, where the couple continued arguing. Gercilus grabbed Lawson and put his hands around her throat. D.W. then entered the room and said "get off my mom, you bitch," id. at 85, and "jumped on [Gercilus'] back," id. at 82. With D.W. on his back, Gercilus moved backward, slammed D.W. backward against a wall, and then started hitting D.W. Lawson then started hitting Gercilus "because he was hitting [her] son." Id. at 87. Eventually Gercilus stopped hitting D.W., turned around, and started hitting Lawson. The fight then moved from the couple's bedroom into the hallway.

Lawson's cell phone, the only phone in the house, was on her dresser. She tried to "slide it" to D.W. and told him to get out of the house and to call the police. Id. at 88. Gercilus intercepted the phone and ran out of the house and down the street with it. Lawson and D.W. then went to a neighbor's house and called the police. When police interviewed Lawson and D.W., Lawson was "visibly upset, a little distraught," had scratches on both arms and complained of pain in her abdomen, id. at 135, and D.W. had scratches on his upper right arm, upper left chest, and all over his back. Lawson and D.W. were examined at a hospital and treated for their pain.

3

The State charged Gercilus with two counts of battery resulting in bodily injury, as Class D felonies; strangulation, as a Class D felony; and interference with the reporting of a crime, a Class A misdemeanor. A jury trial was held January 10 and 11, 2013. During voir dire, Gercilus objected to the composition of the jury panel, specifically, that there were no African-Americans on the panel. After hearing testimony as well as argument from both parties, the trial court overruled the objection and the trial proceeded. The jury found Gercilus guilty of two counts of battery resulting in bodily injury, as Class D felonies, and one count of interference with the reporting of a crime, as a Class A misdemeanor, and it acquitted him of strangulation. The trial court entered judgment of conviction and sentenced Gercilus accordingly. Gercilus now appeals.

## DISCUSSION AND DECISION

### Issue One: Jury Composition

"The United States Supreme Court has long held that 'the selection of a petit jury from a representative cross section of the community is an essential component of the Sixth Amendment right to a jury trial.'" Bradley v. State, 649 N.E.2d 100, 104 (Ind. 1995) (quoting Taylor v. Louisiana, 419 U.S. 522, 528 (1975)). "While petit juries must be drawn from a source 'fairly representative of the community,' there is no requirement that they 'actually . . . mirror the community and reflect the various distinctive groups in the population.'" Id. (quoting Taylor, 419 U.S. at 538). Defendants "are not entitled to a jury of any particular composition," but venire selection systems "must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof." Id. To show a prima facie violation of the fair cross-section

4

requirement, a defendant must show that: (1) the group being excluded is a distinctive group in the community; (2) the representation of this group in jury pools from which juries are being selected is not fair and reasonable in relation to the number of such persons in the community; and (3) this underrepresentation is caused by systematic exclusion. Davis v. State, 819 N.E.2d 91, 101 (Ind. Ct. App. 2004) (citing Duren v. Missouri, 439 U.S. 357, 364 (1979)), trans. denied. Once a defendant has shown a prima facie case of discrimination in the jury selection process, the burden shifts to the State to demonstrate that those aspects of the jury-selection process that result in the disproportionate exclusion of a distinctive group manifestly and primarily advance a significant state interest. Bradley, 649 N.E.2d at 104.

Here, there were no African Americans included in the jury venire. Gercilus contends, and the State does not contest, that African Americans are a distinct group in the community. But Gercilus has not shown that the underrepresentation was caused by a systematic exclusion. The Delaware County Court Administrator testified on the jury list selection process approved by the Indiana Supreme court. And Gercilus acknowledges that the jury venire is randomly selected from voter registration lists obtained from the Bureau of Motor Vehicles as well as from lists of those who have filed an Indiana Department of Revenue tax return and from voter registration records. Gercilus contends, however, that "membership on these lists is restricted to persons who own property, file income tax returns and/or are registered to vote." Appellant's Brief at 21. But the venire is also pulled from lists of those who have obtained a driver's license or identification card. Gercilus has not demonstrated or even argued that African

5

Americans are not included in these lists or that the method of selecting venire members from these lists excludes African Americans.

Gercilus was required to satisfy all three prongs of the test in Davis before the burden would shift to the State. Gercilus has not made a prima facie showing of a systematic exclusion of African Americans from the jury venire. As such, we need not consider whether he satisfied the other prongs of the test. Gercilus' argument that he was denied a fair trial due to discrimination in the jury selection process must fail.

**Issue Two: Jury Instructions**

Gercilus next contends that the trial court abused its discretion when it refused his proffered instructions on lesser-included offenses to battery. As we have discussed:

> "The purpose of a jury instruction 'is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict.'" Dill v. State, 741 N.E.2d 1230, 1232 (Ind. 2001) (quoting Chandler v. State, 581 N.E.2d 1233, 1236 (Ind. 1991)). Instruction of the jury is left to the sound judgment of the trial court and will not be disturbed absent an abuse of discretion. Schmidt v. State, 816 N.E.2d 925, 930 (Ind. Ct. App. 2004), trans. denied. Jury instructions are not to be considered in isolation, but as a whole and in reference to each other. Id. The instructions must be a complete, accurate statement of the law which will not confuse or mislead the jury. Id. at 930-31.

Williams v. State, 891 N.E.2d 621, 630 (Ind. Ct. App. 2008).

When a party requests an instruction on an alleged lesser-included offense, the trial court must use a three-step analysis to determine whether the instruction is appropriate.

> In the first step, the court must compare the statute defining the crime charged and the statute defining the alleged lesser-included offense. If the alleged lesser-included offense may be established by proof of all of the same or proof of less than all of the same material elements to the crime, or

6

if the only difference between the two statutes is that the alleged lesser-included offense requires proof of a lesser culpability, then the alleged lesser-included offense is inherently included in the crime charged.

In the second step, if the trial court determines that the alleged lesser-included offense is not inherently included in the charged crime, it must compare the statute defining the alleged lesser-included offense with the charging instrument in the case. If all of the elements of the alleged lesser-included offense are covered by the allegations in the charging instrument, then the alleged lesser-included offense is factually included in the charged crime.

If the trial court has determined that the alleged lesser-included offense is either inherently or factually included in the charged crime, then it must proceed to the third step. In the third step, the trial court must examine the evidence presented by each party and determine whether there is a serious evidentiary dispute over the element or elements that distinguish the crime charged and the lesser-included offense. If it would be possible for a jury to find that the lesser, but not the greater, offense had been committed, then the trial court must instruct the jury on both offenses.

Watts v. State, 885 N.E.2d 1228, 1231-32 (Ind. 2008) (citations omitted). The refusal to instruct a jury on a lesser-included offense in the presence of a serious evidentiary dispute is reversible error. See id. at 1232.

Here, Gercilus contends that the trial court abused its discretion when it refused to instruct the jury on the lesser-included offense of battery, as a Class B misdemeanor, as to Counts 1 and 2 charged under Indiana Code Section 35-42-2-1(a)(2)(B) and 35-42-2-1(a)(2)(M) respectively. The State counters that Gercilus has not shown that the jury should have been instructed on lesser included offenses because he has not demonstrated a serious evidentiary dispute over the element or elements that distinguish Class D felony battery resulting in bodily injury from Class B misdemeanor battery under Count 1 or

Class A misdemeanor battery under Count 2 of the information.[1] We must agree with the State.

In Count 1, the State charged Gercilus with Class D felony battery resulting in bodily injury under Indiana Code Section 35-42-3-1(a)(2)(B). To prove that offense the State was required to show that Gercilus knowingly or intentionally touched D.W. in a rude, insolent, or angry manner; that the touching resulted in bodily injury; and that D.W. was less than fourteen years old and Gercilus was at least eighteen years old at the time of the offense. And in Count 2, the State charged Gercilus under Section 35-42-2-1(a)(2)(M), which required the State to show that Gercilus knowingly or intentionally touched Lawson in a rude, insolent, or angry manner; that the touching resulted in bodily injury; and that Lawson was a family or household member if (a) Gercilus was at least eighteen years old and (b) he committed the offense within the presence of a child less than sixteen years old, knowing that the child was present and might be able to see or hear the offense.

Gercilus does not argue that the evidence on any of the elements of Counts 1 and 2 are in dispute. Rather, he argues the existence of a serious evidentiary dispute as follows:

> Further, Claudette Lawson and [D.W.] both had different stories as to what they did and where they went during the time Mr. Gercilus returned to the house the first time and when he returned the second time. Ms. Lawson testified that she and [D.W.] left the house and went for a walk with their dog around the neighborhood. [D.W.] testified that they left the house and went to the home of a friend of his mother's. [D.W.] also admitted that he told an investigator that they had gone to a VP [Village Pantry] to get a fountain soda[.]

---

[1] A defendant must prove either the first or second prong under <u>Watts</u> and also the third prong. <u>Watts</u>, 885 N.E.2d at 1231-32. Because we resolve the issue under the third prong, we need not consider the first two prongs. <u>See id.</u>

Thus, there were several discrepancies in the testimony of Ms. Lawson and [D.W.] that would lead a jury to not believe their account[s] as to the events of that evening. In addition, the jury found Mr. Gercilus not guilty of Strangulation. This would indicate that they had some problems believing the entire account presented through testimony of [D.W.] and Ms. Lawson.

Appellant's Brief at 25 (citations omitted). The points made by Gercilus do not pertain to the elements of the offenses charged. Rather, the arguments pertain merely to the credibility of Lawson and D.W. in general. Gercilus has not shown a serious evidentiary dispute regarding elements of the offenses charged, two counts of battery resulting in bodily injury, as Class D felonies. As such, he has not shown that the trial court abused its discretion when it refused to instruct the jury on lesser included offenses to those charges.

### Issue Three: Sufficiency of Evidence

Finally, Gercilus contends that the evidence is insufficient to support his conviction for interference with the reporting of a crime. When the sufficiency of the evidence to support a conviction is challenged, we neither reweigh the evidence nor judge the credibility of the witnesses, and we affirm if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. Wright v. State, 828 N.E.2d 904, 905-06 (Ind. 2005). It is the job of the fact-finder to determine whether the evidence in a particular case sufficiently proves each element of an offense, and we consider conflicting evidence most favorably to the trial court's ruling. Id. at 906.

To prove the offense of interference with the reporting of a crime, the State was required to show that Gercilus, "with the intent to commit, conceal, or aid in the

9

commission of a crime, knowingly or intentionally interfere[d] with or prevent[ed] an individual from . . . using a 911 emergency telephone system." Ind. Code § 35-45-2-5(1). Gercilus argues that the

> evidence was unclear as to what happened with the cell phone. Claudette Lawson testified that she tried to slide the phone to her son but Mr. Gercilus ended up with the phone and running [sic] out of the house. [D.W.] testified that he grabbed the phone on the dresser and tried to run into his bedroom. [D.W.] stated that he threw the phone to his mom but Mr. Gercilus got the phone. It is unclear from this testimony that Mr. Gercilus knowingly or intentionally interfered with [D.W.] or Ms. Lawson using a 911 telephone system.

Appellant's Brief at 25-26. However, Lawson testified that she attempted to slide the phone to D.W. and told him to call the police, but Gercilus intercepted the phone and ran away with it. Gercilus' arguments amount to a request that we reweigh the evidence, which we will not do. The evidence is sufficient to support his conviction for interference with the reporting of a crime.

Affirmed.

MATHIAS, J., and BROWN, J., concur.