## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Susan D. Rayl
Smith Rayl Law Office, LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jonathan Gibson,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent.*

July 19, 2016

Court of Appeals Case No.
49A05-1601-PC-129

Appeal from the Marion Superior
Court

The Honorable Lisa F. Borges,
Judge
The Honorable Anne Flannelly,
Magistrate

Trial Court Cause No.
49G04-0808-PC-197584

**Bradford, Judge.**

# Case Summary

[1] In August of 2008, Appellee-Respondent the State of Indiana (the "State") charged Appellant-Petitioner Jonathan Gibson with Class B felony rape, Class B felony criminal deviate conduct, and Class D felony sexual battery. Gibson was found guilty following a two-day jury trial. He was subsequently sentenced to an aggregate term of twelve years, with six years executed and six years suspended to probation. Gibson appealed, challenging both the sufficiency of the evidence to sustain his convictions and the appropriateness of his sentence. On March 24, 2010, we affirmed Gibson's convictions and sentence.

[2] Gibson subsequently filed a petition seeking post-conviction relief ("PCR"), arguing that he suffered ineffective assistance of both trial and appellate counsel. Following an evidentiary hearing on Gibson's petition, the post-conviction court denied Gibson's PCR petition. On appeal, Gibson challenges the post-conviction court's determination that he did not suffer ineffective assistance of trial counsel. Concluding that Gibson has failed to prove that he suffered ineffective assistance of trial counsel, we affirm.

# Facts and Procedural History

[3] Our memorandum decision in Gibson's prior direct appeal, which was handed down on March 24, 2010, instructs us to the underlying facts and procedural history leading to this post-conviction appeal.

The evidence most favorable to the convictions reveals that Gibson was involved in a romantic relationship with C.V. from November 2007 to February 2008. In July 2008, C.V. saw Gibson at his place of work by chance, and they decided to start dating again. They had consensual sex once at the end of July.

On the evening of Friday, August 1, 2008, C.V. and Gibson went out to dinner. Although C.V. had driven separately to the restaurant, she agreed to go to Gibson's car to smoke a cigarette after dinner. Gibson then drove his car to a nearby, more secluded movie theater parking lot. The two began kissing, with C.V.'s consent. Then, however, Gibson began attempting to kiss C.V.'s breasts, and she said she did not want "to go any further." Tr. p. 43. She explained that she was not comfortable with the public location, and that she wanted their relationship to proceed more slowly than it had the first time. Nevertheless, Gibson continued his advances, eventually removing her pants and inserting his fingers into her vagina. He then began rubbing her vagina with his penis, and finally had sexual intercourse with her. C.V. was unable to move during the sexual encounter because Gibson was placing his weight upon her. C.V. was crying during the incident and told Gibson to "please stop," but he did not do so until he ejaculated. *Id.* at 47. Gibson then told C.V. he was sorry he had made her cry and that "it would never happen again." *Id.* at 61. C.V. did not report the incident to police until Monday, August 4, 2008, when her supervisor at work noticed her crying and took her to a police station.

On August 21, 2008, the State charged Gibson with Class B felony rape, Class B felony criminal deviate conduct, and Class D felony sexual battery. After a jury trial held on July 27-28, 2009, Gibson was found guilty. However, the trial court did not enter a judgment of conviction for the sexual battery count. The trial court sentenced Gibson to twelve years for the rape and criminal deviate conduct convictions, suspended six years of each sentence, and ordered them served concurrently.

*Gibson v. State*, 49A02-0908-CR-820, *1 (Ind. Ct. App. March 24, 2010). On appeal, we affirmed Gibson's convictions and sentence. *Id*. at 2-3.

[4] On October 1, 2010, Gibson filed a *pro-se* PCR petition. Gibson, by counsel, filed an amended PCR petition on May 7, 2014. In this amended petition, Gibson claimed that he received ineffective assistance from both his trial and appellate counsel. On November 16, 2015, the post-conviction court issued an order denying Gibson's petition.[1] This belated appeal follows.

# Discussion and Decision

[5] Post-conviction procedures do not afford the petitioner with a super-appeal. *Williams v. State*, 706 N.E.2d 149, 153 (Ind. 1999). Instead, they create a narrow remedy for subsequent collateral challenges to convictions, challenges which must be based on grounds enumerated in the post-conviction rules. *Id*. A petitioner who has been denied post-conviction relief appeals from a negative judgment and as a result, faces a rigorous standard of review on appeal. *Dewitt v. State*, 755 N.E.2d 167, 169 (Ind. 2001); *Colliar v. State*, 715 N.E.2d 940, 942 (Ind. Ct. App. 1999), *trans. denied*.

[6] Post-conviction proceedings are civil in nature. *Stevens v. State*, 770 N.E.2d 739, 745 (Ind. 2002). Therefore, in order to prevail, a petitioner must establish his

---

[1] Gibson does not challenge the post-conviction court's determination that he received effective assistance of appellate counsel.

claims by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5); *Stevens*, 770 N.E.2d at 745. When appealing from the denial of a PCR petition, a petitioner must convince this court that the evidence, taken as a whole, "leads unmistakably to a conclusion opposite that reached by the post-conviction court." *Stevens*, 770 N.E.2d at 745. "It is only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion, that its decision will be disturbed as contrary to law." *Godby v. State*, 809 N.E.2d 480, 482 (Ind. Ct. App. 2004), *trans. denied*. The post-conviction court is the sole judge of the weight of the evidence and the credibility of the witnesses. *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004). We therefore accept the post-conviction court's findings of fact unless they are clearly erroneous but give no deference to its conclusions of law. *Id.*

# I. Ineffective Assistance of Counsel

The right to effective counsel is rooted in the Sixth Amendment to the United States Constitution. *Taylor v. State*, 840 N.E.2d 324, 331 (Ind. 2006). "'The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results.'" *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 685 (1984)). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper function of the adversarial process that the trial court cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

[8]     A successful claim for ineffective assistance of counsel must satisfy two components. *Reed v. State*, 866 N.E.2d 767, 769 (Ind. 2007). Under the first prong, the petitioner must establish that counsel's performance was deficient by demonstrating that counsel's representation "fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the 'counsel' guaranteed by the Sixth Amendment." *Id*. We recognize that even the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or most effective way to represent a client, and therefore, under this prong, we will assume that counsel performed adequately and defer to counsel's strategic and tactical decisions. *Smith v. State*, 765 N.E.2d 578, 585 (Ind. 2002). Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. *Id*.

[9]     Under the second prong, the petitioner must show that the deficient performance resulted in prejudice. *Reed*, 866 N.E.2d at 769. Again, a petitioner may show prejudice by demonstrating that there is "a reasonable probability (*i.e.* a probability sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the proceeding would have been different." *Id*. A petitioner's failure to satisfy either prong will cause the ineffective assistance of counsel claim to fail. *See Williams*, 706 N.E.2d at 154. Stated differently, "[a]lthough the two parts of the *Strickland* test are separate inquires, a claim may be disposed of on either prong." *Grinstead v. State*, 845 N.E.2d 1027, 1031 (Ind. 2006) (citing *Williams*, 706 N.E.2d at 154).

[10] Gibson contends that his trial counsel provided ineffective assistance by (1) failing to present allegedly exculpatory evidence, (2) erroneously advising him that his prior convictions could potentially be used against him if he testified, and (3) failing to object to alleged prosecutorial misconduct. Alternatively, Gibson contends that even if none of the alleged errors, standing alone, necessitate a new trial, the cumulative effect of these alleged errors do. For its part, the State contends that Gibson's trial counsel did not provide ineffective assistance in any regard.

## A. Failure to Present Allegedly Exculpatory Evidence

[11] Gibson argues that his trial counsel provided ineffective assistance by failing to call an allegedly exculpatory witness to testify during trial. In the context of an ineffective assistance of counsel, claim, "'a decision regarding what witnesses to call is a matter of trial strategy which an appellate court will not second-guess.'" *Curtis v. State*, 905 N.E.2d 410, 415 (Ind. Ct. App. 2009) (quoting *Johnson v. State*, 832 N.E.2d 985, 1003 (Ind. Ct. App. 2005), *trans. denied*). As is stated above, "although egregious errors may be grounds for reversal, we do not second-guess strategic decisions requiring reasonable professional judgment even if the strategy or tactic, in hindsight, did not best serve the defendant's interests." *State v. Moore*, 678 N.E.2d 1258, 1261 (Ind. 1997).

[12] In this case, the record reveals that prior to trial, trial counsel, who had extensive experience in criminal defense, engaged investigator Marty Perkins to examine and photograph "the vehicle that was alleged to be the crime scene to determine … physical limitations" relating to the "ability for the crime to occur

in the way the victim described it." PCR Tr. p. 9. Because the actual vehicle in which the rape was alleged to have occurred was no longer available, Perkins attempted to find a "like" vehicle to photograph for "plausibility factors." PCR Tr. p. 71. The State presented several photographs of the actual vehicle in which the rape was alleged to have occurred during trial. Although the front passenger's seat was not photographed in the same position described by the victim, the photographs presented an accurate depiction of the size of the interior of the vehicle. Trial counsel urged the jury to consider whether, given the photographs of the vehicle, the victim's account was "even physically possible." Trial Tr. 201.

[13] With respect to having Perkins available to testify at trial, trial counsel indicated that his intent was

> to have [Perkins] available, you know, you always kind of see how a trial goes and I did subpoena him and he recalls being present in the court office and ready to go, so I clearly intended to have him available and, and able to testify if I thought it was appropriate.

PCR Tr. p. 20. After conclusion of the presentation of State's case-in-chief and a brief conversation with Gibson, trial counsel decided that it was not necessary to have Perkins testify. Although he could not remember the exact reason for this decision during the post-conviction evidentiary hearing, trial counsel indicated as follows:

> Again … what I can say without any specific recollection is this. I had [Perkins] here and prepared with pictures, had he done his

job. I thought there was a potential that he could help. There must have been a reason … that had to have been an actual decision. There must have been something that occurred to cause me to (inaudible). I just don't remember what that was.

PCR Tr. p. 35.

[14] Perkins stated during the post-conviction evidentiary hearing that trial counsel provided him with a reason for not calling him to testify.[2] Perkins indicated that he questioned that decision because he thought his testimony regarding his photographs of the so-called "like" vehicle could potentially have been beneficial to the defense. Perkins, however, acknowledged that after completing his examination of the so-called "like" vehicle, he could not say that it was impossible for the sexual intercourse described by the victim to have taken place in the vehicle.

[15] Gibson claims that his trial counsel rendered ineffective assistance by failing to call Perkins to testify at trial because Perkins's testimony was critical to refuting the victim's testimony that Gibson was able to force her over the top of the passenger seat, into the back seat, and, with his body partially between the reclined front and back seats of the vehicle, rape her. Perkins, however, acknowledged that upon completing his investigation, he could not testify that it was impossible for the sexual intercourse to have occurred as it was described by the victim. Thus, Perkins's testimony, if offered, would not have refuted the

---

[2] Perkins, however, did not relate what this reason was.

victim's testimony. In addition, while trial counsel could not remember the exact reason why he decided not to call Perkins to testify at trial, he did remember that it was a tactical decision made after the State had fully presented its case-in-chief and was based on the events of and information presented during trial.

[16] Further, Gibson has failed to convince us that the outcome of his trial would have been different if, through Perkins, the defense had introduced photographs of a similar vehicle when photographs of the actual vehicle in which the rape was alleged to have occurred were admitted into evidence. Despite the fact that the seat was not laid back in the admitted photographs as the victim described it was during the rape, the record demonstrates that the admitted photographs accurately depicted the size of the vehicle to the jury. Trial counsel implored the jury to review the photographs of the vehicle at issue and consider whether, given the size of the vehicle, the victim's account was even physically possible. As such, we are unable to see how Gibson was prejudiced by trial counsel's decision not to call Perkins to testify at trial.

[17] Upon review we conclude that Gibson has failed to establish that his trial counsel committed an egregious error by failing to call Perkins to testify, and, as a result, we will not second-guess trial counsel's tactical decision regarding what witnesses to call during trial. *See Moore*, 678 N.E.2d at 1261 (providing that while egregious error may amount to grounds for a reversal, we will not second-guess strategic tactical decisions made by counsel at trial). Gibson has also failed to demonstrate that he was prejudiced by trial counsel's decision. *See*

*Reed*, 866 N.E.2d at 769 (providing that one may show prejudice by demonstrating that there is a reasonable probability that but for the error, the result of the proceedings would have been different). We therefore further conclude that Gibson has failed to establish that his trial counsel's performance was deficient or fell below an objective standard of reasonableness. *See id.*

## B. Allegedly Erroneous Advisement by Trial Counsel

Gibson also argues that his trial counsel provided ineffective assistance by erroneously advising him that his prior convictions could be used against him if he chose to testify. Gibson asserts that he wanted to testify so that he could present his claim that he did not rape the victim, but rather that he and the victim engaged in consensual sex. Gibson also asserts that he wished to give context to certain text messages he exchanged with the victim that were admitted into evidence.

With respect to his advice to Gibson, trial counsel testified during the PCR evidentiary hearing as follows:

> Q    And I certainly understand that, yes. All right. [Trial Counsel], do you have any recollection of discussing with Mr. Gibson whether or not he would testify in his own behalf?
>
> A    I am sure we did discuss it but I don't have any independent recollection today.
>
> Q    Okay. Let me see if this refreshes your recollection. Um, would you have possibly told Mr. Gibson that you did not want him to testify because his prior criminal convictions could come out?

A       If I thought that he had prior convictions that were going to come out, I'm certain I would have said that. If I thought he had prior convictions that could come out – and just the way you phrased the question I want to give you a complete answer – I would have said, I would have geared it more toward the possibility of (inaudible).

Q       Okay, and at this point do you remember whether he had any [convictions that would come out automatically] or not?

A       I don't. I don't have a recollection what his history was at the time of the trial.

Q       Okay. So basically your answer is you don't know what you might have told him or discussed as to why he should or should not testify.

A       No. I know what I generally tell clients with criminal history and if they have criminal history that would definitely come in, I phrase it that way and if they could possibly open the door, I try to keep it phrased that way, you know, there's still a risk even though it isn't automatic.

PCR Tr. pp. 17-18. On cross-examination by the State trial counsel further testified as follows:

Q       Sure, okay. Regarding any conversation you would have had with Mr. Gibson about his, his right to testify at trial, you had mentioned on direct that you would have – if you thought he had priors, prior convictions that would come out either [automatically] or that could possibly come out, you said something like that, that you would have advised him on those. Can you describe – can you explain what you mean by the difference?

A       Certainly. I mean, there are some convictions, prior convictions that by rule can be used to impeach a person, (indecipherable) within ten years. They exist in a person's criminal history and you know they're going to be used, you have to incorporate it in the preparation to testify. You know they're coming in. There are other types of convictions that may or may not come in. An old conviction and the person says I've never been in trouble before. Well, all of a sudden there at least could be a motion that that opens the door to the old conviction that you thought was not going to come in, so you have to (indecipherable) like that, things that may have opened the door and the threats that posed and how to one, avoid it and two, deal with it if, if it happens.

Q       Okay, or even if your client has a newer conviction … he could still inadvertently say something on the stand that could open the door to that. Is that a fair statement?

A       Yes, that was just one hypothetical I was using.

Q       Okay.

A       There are other ways you can open the door.

Q       Okay, and so those are things that you as a matter of procedure would have discussed – would discuss with a client in the conversation regarding whether or not he'll testify at trial.

A       We would have gone over criminal history generally even outside the question of testifying or not and then also within the context of whether or not to testify and how it would impact (inaudible).

PCR Tr. pp. 30-32. Trial counsel also testified that while he could not remember exactly what he told Gibson or rule out any possible misstatement of

the law regarding whether Gibson's prior convictions could be used against him if he chose to testify during trial, he ultimately would have left the decision whether to testify up to Gibson.

[20] Further, during the PCR evidentiary hearing, Gibson stated that the fact that the jury might be informed about his criminal record affected his decision not to testify. Gibson did not state that trial counsel told him that his prior convictions would definitely be used against him, only that they could possibly be used against him if he did. This is not an inaccurate advisement, as, under certain circumstances, Gibson's criminal history could be brought to the jury's attention. Gibson has therefore failed to prove that he suffered ineffective assistance because of receiving erroneous advice from his trial counsel.

## C. Failure to Object to Alleged Prosecutorial Misconduct

[21] Gibson next argues that he suffered ineffective assistance of trial counsel because trial counsel failed to object to two alleged instances of prosecutorial misconduct. To establish ineffective assistance for trial counsel's failure to object to alleged misconduct by opposing counsel, a petitioner must establish that the trial court would have sustained the objection had one been made and that he was prejudiced by the failure to object. *Jones v. State*, 847 N.E.2d 190, 197-98 (Ind. Ct. App. 2006) (citing *Wrinkles v. State*, 749 N.E.2d 1179, 1192 (Ind. 2001), *cert. denied*, 535 U.S. 1019 (2002)).

> In reviewing a claim of prosecutorial misconduct, we determine (1) whether the prosecutor engaged in misconduct, and if so, (2) whether that misconduct, under all of the circumstances, placed

the defendant in a position of grave peril to which he or she should not have been subjected. *See Wisehart v. State*, 693 N.E.2d 23, 57 (Ind. 1998), *cert. denied*, 526 U.S. 1040, 119 S.Ct. 1338, 143 L.Ed.2d 502 (1999); *Wright v. State*, 690 N.E.2d 1098, 1110 (Ind. 1997), *reh'g denied*. The "gravity of peril" is measured by the "'probable persuasive effect of the misconduct on the jury's decision, not on the degree of impropriety of the conduct.'" *Wisehart*, 693 N.E.2d at 57 (quoting *Kent v. State*, 675 N.E.2d 332, 335 (Ind. 1996) (citing in turn *Bradley v. State*, 649 N.E.2d 100, 107-08 (Ind. 1995), *reh'g denied*.)).

*Coleman v. State*, 750 N.E.2d 370, 374-75 (Ind. 2001).

### *1. Alleged Misconduct During Examination of the Victim*

[22] Gibson asserts that his trial counsel provided ineffective assistance by failing to object to alleged prosecutorial misconduct that occurred during the State's direct examination of the victim. At the outset of the victim's trial testimony, the deputy prosecutor informed the victim that she had "to use [her] outside voice" while testifying and that there was "water and tissue up there if [she] need[ed] it." Trial Tr. p. 19. At another point, the deputy prosecutor asked the victim if she was nervous. The deputy prosecutor also asked the victim at another point if she needed a drink of water and told her to "go ahead" and take a drink when she indicated that she did. Trial Tr. p. 41. These three instances took place over the course of what was a lengthy examination of the victim.

[23] We must note that Gibson does not point to any State or local trial rule which would establish that the deputy prosecutor's behavior in this regard was

improper, and we are aware of no such rule. Gibson merely claims that the deputy prosecutor's statements implied to the jury that the victim could not get through her testimony without crying or having water to drink. He further claims that by showing some general level of concern for the victim, the deputy prosecutor committed misconduct by conducting himself toward the victim in a manner that might appear overly solicitous and which might garner sympathy for the victim.

[24] For his part, trial counsel indicated during the PCR evidentiary hearing that he did not consider objecting to these statements by the deputy prosecutor because the victim, who was testifying about an alleged sexual assault, was "obviously teary eyed" and "emotional." PCR Tr. p. 14. When asked if "there [would have been] anything to be gained by objecting," trial counsel indicated that "[i]t's a delicate call, especially with sex crimes." PCR Tr. p. 26. Trial counsel further indicated that while he generally would not hesitate to object or request permission to approach the trial court to discuss what he believed might be inappropriate comments by opposing counsel, he generally would not object if he did not believe there was a basis for raising the objection.

[25] We cannot see how alerting a visibly upset witness who is being subjected to a lengthy examination about a sensitive subject matter that there are tissues and water available to her and offering to pause while she takes a drink is improper or amounts to misconduct. Further, given the delicate nature of the victim's testimony, trial counsel's decision not to object to the deputy prosecutor's display of concern for the victim seems to be a sound tactical decision

considering the potential negative impact that could come from appearing uncaring or the perception of being too hard on the visibly upset witness. Gibson has failed to show that any objection raised by trial counsel with regard to the challenged statements would have been sustained. Gibson has also failed to establish that the challenged statements placed him in great peril or that he was prejudiced by the challenged statements. Gibson, therefore, has failed to establish prosecutorial misconduct, much less that his trial counsel provided him with ineffective assistance by failing to object to the alleged misconduct.

### 2. Alleged Misconduct During Rebuttal Closing Argument

Gibson also asserts that his trial counsel provided ineffective assistance by failing to object to alleged prosecutorial misconduct that occurred during the State's rebuttal closing argument. In raising this assertion, Gibson claims that his trial counsel should have objected to a single statement made by the deputy prosecutor which he claims improperly impugned trial counsel.

At the outset of his rebuttal closing argument, the deputy prosecutor stated "I'll start with the fact that [trial counsel] has done, this is a first class trial. What he has done is he has used what he claims are inconsistencies [in the victim's testimony] and he calls them stories." Trial Tr. p. 205. The deputy prosecutor then went on to outline the reasons why he believed that (1) the alleged inconsistencies in the victim's testimony did not indicate that she was being untruthful and (2) he had proved beyond a reasonable doubt that Gibson had committed the charged crimes. The deputy prosecutor made no other reference to trial counsel during the remainder of his rebuttal closing argument.

[28] During the PCR evidentiary hearing, trial counsel stated that he does not believe he considered objecting to the deputy prosecutor's statement. When asked why, trial counsel acknowledged that it was possible that he might not have heard the deputy prosecutor's comment because it occurred in the first sentence of the deputy prosecutor's rebuttal closing argument when he might have been getting settled after giving his closing argument. In addition, trial counsel indicated that in making the tactical decision whether to object to a statement by opposing counsel, he generally considers numerous factors including whether the statement at issue is repetitious or a single statement, how opposing counsel is standing in front of the jury, opposing counsel's demeanor in addressing the jury or the defendant, their facial expressions and gestures, emphasis on certain words, and the visible impact on the jury. He also indicated that he considers the potential impact that bringing the statement to the jury's attention by objecting may have on the jury.

[29] On its face, the complained of statement by the deputy prosecutor does not seem improper. It seems unlikely that the comment somehow impugned trial counsel by implying to the jury that he was a "slick lawyer." Appellant's Br. p. 19. Rather, it seems more likely that the comment would imply that trial counsel had done a good job representing his client's interests as the deputy prosecutor felt it necessary to explain why he believed trial counsel's position was incorrect.

[30] As was the case above, Gibson has failed to show that any objection raised by trial counsel with regard to the challenged statement would have been

sustained. Gibson has also failed to establish that the challenged statement placed him in great peril or that he was prejudiced by the challenged statement. Gibson, therefore, has again failed to establish prosecutorial misconduct, much less that his trial counsel provided him with ineffective assistance by failing to object to the alleged misconduct.

## D. Cumulative Effect

[31] Gibson last argues that even if none of the above-discussed alleged instances of ineffective assistance alone warranted a new trial, the cumulative effect of these alleged instances of ineffective assistance warranted a new trial. However, having concluded that Gibson failed to establish that he suffered ineffective assistance in any of the above-complained of regards, we disagree.

# Conclusion

[32] In sum, we conclude that Gibson has failed to establish that his trial counsel provided ineffective assistance by (1) failing to present allegedly exculpatory evidence, (2) erroneously advising him that his prior convictions could potentially be used against him if he testified, or (3) failing to object to alleged prosecutorial misconduct. Gibson has also failed to establish that the cumulative effect of the alleged errors warranted a new trial. We therefore affirm the judgment of the post-conviction court.

[33] The judgment of the post-conviction court is affirmed.

Bailey, J., and Altice, J., concur.