Harold WARREN, Defendant–
Appellant,

v.

STATE of Indiana, Plaintiff–Appellee.

No. 49S00–0008–CR–467.

Supreme Court of Indiana.

Nov. 8, 2001.

Brent Westerfeld, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Timothy W. Beam, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

DICKSON, Justice.

The defendant, Harold Warren, was convicted of the January 1999 murder[1] and robbery[2] of Jack Dorfman. The defendant's appeal seeks reversal of his convictions and presents the following issues: (1) admission of evidence regarding the purchase of a handgun; (2) admission of opinion evidence; (3) limitations on cross-examination of a witness; and (4) presence of and court response to an inattentive juror. We affirm the convictions.

### Admission of Handgun Purchase Evidence

The defendant contends that evidence of a handgun purchased from one of his brothers was improperly admitted. He argues that the evidence was irrelevant, that its prejudicial impact outweighed any probative value, and that his motion for mistrial should have been granted.

The State presented the testimony of Paul Fancher regarding a .22 caliber revolver. A bullet fragment taken from the murder victim was consistent with a .22 caliber bullet, although it could not be linked to a particular gun. The absence of shell casings at the crime scene suggested that a revolver type of handgun was the murder weapon. Fancher testified without objection that three days after the murder he purchased a .22 caliber revolver from the defendant's brother, Ron Warren, who told Fancher that he had gotten it from his (Ron Warren's) brother. At this point, Fancher's testimony did not identify which of Ron Warren's brothers was the source of the revolver.[3] The State was permitted, over the defendant's hearsay objection, to elicit Fancher's testimony that after purchasing the revolver, he discovered that the defendant, one of Ron Warren's brothers, had been arrested for murder. The trial court explained its ruling to the jury advising that the testimony was "not being offered for the truth of the matter but only to show why this witness did what he did." Record at 578.

Fancher next testified without objection that he then called the detective handling the investigation and told him of purchasing the revolver from Ron Warren. The prosecutor next asked, "What else did you tell the detective?" Fancher replied that Ron Warren had purchased the gun from his brother who had been arrested. At this point, defense counsel immediately objected and moved to strike. In the ensuing bench conference, the defense argued

---

1. Ind.Code § 35–42–1–1.

2. Ind.Code § 35–42–5–1.

3. Fancher testified on cross-examination that Ron Warren had two or three brothers. Record at 586.

that Fancher's testimony about what he told the detective was based on information he received from another person, thus it was double hearsay, and that because of its great prejudicial impact he was moving for a mistrial. After learning from the State that Ron Warren was not going to be a witness, the trial court ruled:

> The Court finds that the testimony that Ron had bought it or gotten the gun from his brother who had been arrested for murder is highly prejudicial. The Court is going to strike that part of the response from the record, it is hearsay, and it is not admissible hearsay because there's no way they wouldn't consider that as the truth of the matter. Mistrial is an extreme remedy. The Court believes that the error can be cured by a limiting instruction and by striking the response from the record.

Record at 583–84. The jury was then brought back into the courtroom and instructed that Fancher's last response "is hereby stricken from the record" and "is not to be considered by the jury as evidence in this case." Record at 584. The State was later permitted to place in evidence the revolver purchased by Fancher over the defendant's "same foundational objection based upon the hearsay issue that we've discussed with the Court before." Record at 592. The trial court admitted the exhibit noting that the objection "goes towards the weight and not the admissibility of the exhibit." Record at 593.

■ On appeal, the defendant first urges that Fancher's testimony regarding the revolver and the handgun itself should have been excluded as irrelevant under Indiana Evidence Rules 402 or 403. Because the defendant did not object on these grounds when the evidence was presented at trial,[4] he may not raise them for the first time on appeal. *See Gill v. State*, 730 N.E.2d 709, 711 (Ind.2000); *Ogle v. State*, 698 N.E.2d 1146, 1151 (Ind.1998).

■ The defendant also argues that the trial court erred in failing to grant his motion for mistrial in which he asserted great prejudicial impact from Fancher's testimony that he told the detective that Ron Warren had purchased the revolver from his brother who had been arrested. Acknowledging that the trial court did order the testimony stricken, the defendant argues that the admonition was insufficient to cure the error in light of Fancher's other testimony.

■ When a jury is admonished after a trial error, the trial court's denial of a motion for mistrial will be reviewed applying the following considerations:

> Because the trial court is in the best position to evaluate the relevant circumstances of an event and its impact on the jury, the trial court's determination of whether to grant a mistrial is afforded great deference on appeal. To succeed on appeal from the denial of a motion for mistrial, the appellant must demonstrate the statement or conduct in question was so prejudicial and inflammatory that he was placed in a position of grave peril to which he should not have been subjected. Mistrial is an extreme remedy invoked only when no other measure can

---

4. The defendant urges that he objected to the evidence based on relevancy at the commencement of trial, just before preliminary jury instructions were given. This Court has clearly rejected an analogous claim and explicitly held that the denial of a motion in limine does not preserve error and that the failure to make a timely objection to the evidence at trial waives the error on appellate review. *Clausen v. State*, 622 N.E.2d 925, 927–28 (Ind.1993). We further note that, in denying the defendant's motion in limine, the trial court here expressly advised: "So you need to make your objections at the appropriate time." Record at 195.

rectify the perilous situation. We determine the gravity of the peril based upon the probable persuasive effect of the misconduct on the jury's decision rather than upon the degree of impropriety of the conduct. Moreover, reversible error is seldom found when the trial court has admonished the jury to disregard a statement made during the proceedings. *Bradley v. State,* 649 N.E.2d 100, 107–08 (Ind.1995)(internal citations omitted).

We recognize that the trial judge expressly found that the stricken testimony was "highly prejudicial." Record at 583. The judge concluded, however, that the error could be cured by the limiting instruction, which was then given.

To determine the probable persuasive effect of the stricken testimony on the jury verdict, the other evidence presented is an important consideration. Excluding the stricken testimony, the jury heard evidence that the victim, Jack Dorfman, the proprietor of a small Indianapolis store that purchased and sold jewelry and precious metals and cashed checks, was killed by a single .22 caliber gunshot wound to the head, probably fired from a revolver. Three days after the murder, Paul Fancher had purchased a .22 caliber revolver from the defendant's brother, Ron Warren, who had obtained it from one of his brothers. After learning that the defendant had been arrested for the murder, Fancher turned the gun over to police. On the day before the murder, the defendant had been in Dorfman's store to sell some rings. After Dorfman declined and directed that the defendant be escorted out of the shop, the defendant told him: "I'll be back." The defendant admitted to police that he was in Dorfman's store on the day of the murder. After the murder, the defendant's fingerprints were discovered on a pawn ticket found on the counter of the shop, and yet the defendant told police that he never could have left his thumbprint on a pawn card because he had never pawned anything. On the day of the murder, the defendant used Dorfman's credit cards at a liquor store, a Meijer store, a K–Mart store, and a Radio Shack store.

Considering the probable persuasive effect of the stricken testimony on the jury's decision in light of the other evidence presented, we are not persuaded that the initially received but then stricken testimony of Paul Fancher was so prejudicial and inflammatory as to place the defendant in a position of grave peril to which he should not have been subjected so as to require the trial court to grant his motion for mistrial. We find no error in the trial court's decision to admonish the jury and to deny the defendant's motion for mistrial.

### Opinion Evidence

■ A Radio Shack employee testified for the State that the defendant, using Dorfman's credit cards, attempted to purchase several items including a trunk tracking radio scanner. The prosecutor asked the witness, "[D]o you think that the possession of a trunk tracker scanner could help an individual in evading the police?" Record at 454. The defense stated, "Objection. Relevance." *Id.* The trial court ruled: "I'll overrule on relevance. You may answer the question." *Id.* The witness then answered, "Very much so." *Id.*

The defendant now contends that admission of this testimony was error because it was not within the witness's personal knowledge and observation, it was speculative, it was an opinion regarding the defendant's intent, and that it concerned a matter exclusively within the jury's province. The defendant did not raise these grounds when the evidence was presented at trial, and he may not raise them for the first time on appeal. *See Gill,* 730 N.E.2d at 711; *Ogle,* 698 N.E.2d at 1151.

### Limitation on Cross-examination

 The defendant contends that the trial court erred in limiting his cross-examination of a witness for the State. On direct examination of the Radio Shack manager, the State brought out that he had been "convicted of the crime of fraudulent use of a telephone and two counts of receiving stolen property." Record at 430. On cross-examination the defendant sought to delve into the details of these previous convictions, specifically whether the manager had used any aliases in the commission of these crimes. The State objected, and the court sustained the objection.

The defendant first contends that the State's question on direct examination opened the door to questions regarding the details of the witness's convictions. The Indiana Rules of Evidence allow the credibility of a witness to be attacked by "evidence that the witness has been convicted" of "a crime involving dishonesty or false statement," Ind. Evid. Rule 609(a), and authorize cross-examination on "the subject matter of the direct examination and matters affecting the credibility of the witness." Ind.Evid. Rule 611(b).

 When a witness does nothing more than acknowledge the fact of a prior criminal conviction, the door is not necessarily opened to cross-examination regarding the details of the conviction. *See Quarles v. State,* 493 N.E.2d 1247, 1247–48 (Ind.1986)(finding that although details of defendant's battery conviction would not be admissible, a follow-up question from defense counsel, "Got in a fight or something?" opened door to cross-examination regarding details of a battery conviction that involved a shotgun); *Skaggs v. State,* 260 Ind. 180, 187, 293 N.E.2d 781, 785 (1973)(noting that "[o]dinarily, details of prior convictions should not be explored," but finding door had been opened by questions on redirect on whether the convictions were the result of a plea of guilty for the State to inquire about whether the pleas were a result of a plea bargain); 13 ROBERT LOWELL MILLER, JR., INDIANA EVIDENCE § 609.105 (2d 1995).

Here the direct examination by the State did not go beyond the existence of the convictions, and thus the door remained shut. The trial court did not err in sustaining the State's objection.

 ██ The defendant also argues that the trial court's limitation of cross-examination violated his constitutional right of confrontation. Emphasizing that *Smith v. Illinois,* 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968), held that a witness could be cross-examined regarding their name and address, he argues that "the logical application of *Smith* should permit inquiry into false names used by a prosecution witness." Br. of Appellant at 28. While the Sixth Amendment right of confrontation assures a defendant's right to cross-examine witnesses, this right is subject to reasonable limitations by trial judges. *Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674, 683 (1986); *Logan v. State,* 729 N.E.2d 125, 134 (Ind.2000); *Strong v. State,* 538 N.E.2d 924, 928 (Ind.1989).

The defendant argues that he should have been able to inquire whether the defendant used false names when he committed the prior crimes of dishonesty. We are not persuaded that this peripheral inquiry was reasonably related to permissible impeachment or otherwise probative evidence. We find that it was within the trial court's discretion to preclude this inquiry, in accordance with Evid. R. 609(a), which expressly permits evidence regarding the fact of prior convictions, but not evidence regarding the surrounding circumstances.

## Sleepy Juror

■ The defendant contends that a sleeping juror violated his rights to fair trial and trial by jury, and that the trial court's private message to the juror without notifying counsel impinged on his right to counsel. These issues were raised by the defendant's motion to correct error, supported by a post-trial affidavit in which juror M.S. stated that he "nodded off asleep at times during the trial." Record at 29. The juror seated next to M.S. stated in her affidavit that she observed him fall asleep and would wake him by nudging him with her arm or knee. Record at 31. The trial court denied the motion to correct error.

■ To prevail on a claim of juror misconduct through inattentiveness, the defendant must demonstrate that the juror was actually inattentive and that the juror's inattention resulted in actual prejudice. *Chubb v. State*, 640 N.E.2d 44, 48 (Ind.1994); *Whiting v. State*, 516 N.E.2d 1067, 1068 (Ind.1987). The trial court determined that the defendant failed to meet either prong:

> The defendant has failed to demonstrate either element of the test. While [M.S.] may have "nodded off asleep at times during the trial" there is no indication or evidence of what specific times or how long he was asleep. There is evidence that when [M.S.] would nod off; he would be awakened by juror # 5, which leads the Court to believe the juror would nod off for only brief moments of time. Further, the Court only noticed one occasion of inattentiveness during a bench conference; and not during the presentation of any evidence. Defense counsel nor the defendant noticed any instances of inattentiveness during the trial, as [defense counsel] first learned of this issue after being contacted by appellate counsel. Further, defendant nor defense counsel raised this issue at anytime during the trial.

Record at 166. The record supports the findings of the trial court, and we discern no abuse of discretion in the denial of the motion to correct errors on the issue of juror inattentiveness.

■ The defendant's related claim is that the trial court erred in denying his motion to correct error alleging improper communication between the judge and the somnolent juror. During the trial, the judge sent a note by way of the bailiff to M.S. advising him to "stay awake and pay attention." Record at 167. The judge took this action without the parties' knowledge. The defendant does not object to the content of the communication but that it was done without notice to and input from the parties. He argues that timely notice would have enabled him to request voir dire of the juror to determine whether portions of the evidence had been missed.

■ Control and management of the jury is generally committed to the trial court's discretion. *Rogers v. R.J. Reynolds Tobacco Co.*, 745 N.E.2d 793, 795 (Ind. 2001); *Norton v. State*, 273 Ind. 635, 661, 408 N.E.2d 514, 531 (1980). We have recognized in the context of allowing jurors to take notes during the trial that the trial court has a "duty to ensure that jurors pay attention to all the evidence in the case." *Stephenson v. State*, 742 N.E.2d 463, 477 (Ind.2001). Although an *ex parte* communication may create a presumption of error, such a presumption is rebuttable and does not constitute *per se* grounds for reversal. *Bouye v. State*, 699 N.E.2d 620, 628 (Ind.1998). In deciding whether the presumption of harm has been rebutted, we evaluate the nature of the communication to the jury and the effect it might have had upon a fair determination. *Smith v. Convenience Store Distrib. Co.*, 583 N.E.2d 735, 738 (Ind.1992). The trial

court's note, given in open court during a bench conference, did not involve a legal instruction or highlight a factual matter. Considering the nature of the communication and its possible effect, we find that it did not have a prejudicial effect upon the fairness of the defendant's trial.

### Conclusion

The defendant's convictions are affirmed.

SHEPARD, C.J., and SULLIVAN, BOEHM and RUCKER, JJ., concur.