**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**CARA SCHAEFER WIENEKE**
Wieneke Law Office, LLC
Plainfield, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANGELA N. SANCHEZ**
Deputy Attorney General
Indianapolis, Indiana

**FILED**
Jun 12 2012, 9:12 am

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| HASSAN M. ALJARAH, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 20A03-1111-CR-541 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ELKHART CIRCUIT COURT
The Honorable Terry C. Shewmaker, Judge
Cause No. 20C01-0911-FA-44

**June 12, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

When Hassan M. Aljarah met his friend Abdul Alfartusi in a Meijer parking lot after an argument by phone, Aljarah brought a gun. He drove up to Alfartusi and asked him to come around the side of the building. When Alfartusi did so, Aljarah shot him from behind the door of his pickup truck, injuring him in the neck and back. Aljarah then jumped into the driver's seat, pulled over to where Alfartusi lay seriously injured, muttered taunting words to him, and sped away. Immediately thereafter, police arrived on the scene, and Alfartusi identified Aljarah as his shooter.

The State charged Aljarah with attempted murder, and Alfartusi testified at his jury trial. Much of Alfartusi's testimony was difficult to discern due to a language barrier. When the trial court asked him to speak slowly and clearly, he stated in broken English that Aljarah had done the same thing to another friend. The trial court admonished the jury to disregard the statement, and the jury convicted Aljarah as charged. Aljarah now appeals, claiming that he was denied his right to a fair trial. Finding no error, we affirm.

**Facts and Procedural History**

On November 3, 2009, Aljarah and Alfartusi became involved in an argument that spanned several phone calls. Eventually, the two met in the parking lot of a nearby Meijer store. Alfartusi stood outside while his family shopped inside the store. When Aljarah arrived, he drove up to Alfartusi and told him to come around the side of the building. As Alfartusi approached the rendezvous spot, Aljarah was standing outside his pickup truck with the driver's door open in front of him and the window down. When he was about fifty feet

2

away, Alfartusi asked Aljarah what he wanted, and Aljarah said nothing. Alfartusi noticed a gun in Aljarah's hand, and in a split second, Aljarah placed his gun on his open truck window and shot Alfartusi.

As Alfartusi lay in the parking lot, Aljarah drove over to him, got out of his truck, and said, "I told you I kill you. I kill you. Is good for you now." Tr. at 110-11. Surveillance video showed Aljarah's truck as it sped out of the parking lot. Police arrived shortly thereafter, and Alfartusi identified Aljarah as his shooter. Alfartusi sustained serious wounds to his neck and back, resulting in the loss of use of his legs and confinement to a nursing home.

On November 9, 2010, the State charged Aljarah with class A felony attempted murder. His ex-girlfriend testified that she had observed him during his phone calls with Alfartusi and that she had never before seen him display such anger. Alfartusi also testified at trial. Because his native language is Arabic and he could not read or write in English, his testimony was difficult to understand. As a result, the trial court had to ask repeatedly for clarification. During cross-examination, Alfartusi was testifying concerning the arguments between him and Aljarah, and the following exchange occurred:

> [DEFENSE COUNSEL]: Okay. So it was a very angry argument both ways?
>
> [ALFARTUSI]: Yes, sir.
>
> [DEFENSE COUNSEL]: And did this argument have something to do with things like people, maybe [Aljarah] helping you move or you helping [Aljarah] move?
>
> [ALFARTUSI]: [Aljarah] sometime fight with (indiscernible) his friend, and I don't bring gun, you know, (indiscernible) and kill him too. (indiscernible)

3

fight with him one time.

[DEFENSE COUNSEL]: Okay. The argument between you—

[THE COURT]: Hold on. You're going to have to go back and clarify the answer.

[DEFENSE COUNSEL]: The—the—the argument that you were talking about because I didn't understand—

[THE COURT]: No, Mr. Majerek [defense counsel], I'm sorry. You're going to have to repeat what you just said, sir. Slower so that we can understand it. What did you say?

[ALFARTUSI]: I say this a problem before him with your friend.

[THE COURT]: All right. There was a problem before with [Alfartusi] and a friend.

[ALFARTUSI]: No. Him. [Aljarah] (indiscernible) his friend.

[THE COURT]: There was a problem before with [Aljarah] and his friend.

[ALFARTUSI]: Yeah, him. And he tried to kill him too.

[DEFENSE COUNSEL]: Your Honor.

[THE COURT]: Counsel approach.

(Counsel approached the bench and an off-the-record discussion was held.)

[THE COURT]: All right. There's been an objection registered now by [defense counsel] that the answer was not responsive to the question. The objection is sustained. [The prosecutor] is also in agreement.
There was an issue with respect to understanding. So it will be stricken from the record. The jury is admonished to disregard the answer to the extent they understood any of it given by the witness. Ask your next question.

*Id*. at 116-17.

After a two-day trial, the jury convicted Aljarah as charged. He now appeals. Additional facts will be provided as necessary.

**Discussion and Decision**

Aljarah contends that the trial court erred in handling Alfartusi's unsolicited testimony concerning prior bad acts and in failing to declare a mistrial. Rulings on admissibility of evidence and on motions for mistrial are matters left to the trial court's sound discretion, and we review them using an abuse of discretion standard. *Short v. State*, 962 N.E.2d 146, 148 (Ind. Ct. App. 2012) (admissibility of evidence); *Jackson v. State*, 925 N.E.2d 369, 373 (Ind. 2010) (mistrial).

*A. Evidence of Prior Bad Act*

Aljarah first contends that he was denied his right to a fair trial due to Alfartusi's testimony concerning a prior bad act, i.e., that Aljarah had previously tried to kill another friend. Indiana Evidence Rule 404(b) prohibits testimony concerning a defendant's prior bad acts to prove his character in order to show action in conformity therewith. However, Aljarah did not object on the basis of Rule 404(b). Instead, an unrecorded bench conference ensued, after which the trial court stated that Aljarah had objected on the basis that the answer was "not responsive to the question." Tr. at 117. The trial court sustained the objection and admonished the jury to disregard Alfartusi's statement. Grounds for objection must be specific, and any grounds not raised at trial are not available on appeal. *Espinoza v. State*, 859 N.E.2d 375, 384 (Ind. Ct. App 2006); Ind. Evidence Rule 103(a). Absent any specific reference to Rule 404(b) as a basis for Aljarah's objection at trial, he may not avail

himself of it in this appeal.

## *B. Mistrial*

Aljarah also claims that the trial court abused its discretion by failing to declare a mistrial. "[W]here the jury is exposed to inadmissible or potentially prejudicial evidence of prior unrelated criminal activity, a prompt admonition to the jury is usually sufficient to protect the defendant's rights." *Lambert v. State*, 448 N.E.2d 288, 291 (Ind. 1982). "If that remedy is insufficient, the grant of a mistrial premised on the defendant's motion is appropriate." *Id*. Here, Aljarah promptly requested a bench conference after Alfartusi referenced the prior unrelated criminal act. Because the conference was not recorded, we have no record of any motions for corrective remedies made during that time. Immediately thereafter, the trial court admonished the jury "to disregard the answer to the extent they understood any of it given by the witness." Tr. at 117. At that point, Aljarah did not request a mistrial. Thus, there is nothing in the record to indicate that Aljarah ever requested a mistrial. Moreover, he cites no authority for the proposition that the trial court is obligated to sua sponte declare a mistrial. In light of his failure to seek a mistrial on the record, we find that he has waived the issue for appeal. *Id*.

Waiver notwithstanding, "reversible error is seldom found when the trial court has admonished the jury to disregard a statement made during the proceedings." *Warren v. State*, 757 N.E.2d 995, 999 (Ind. 2001) (citation and quotation marks omitted). We may presume that the jury complied with trial court's admonishment to disregard testimony. *Hollen v. State*, 740 N.E.2d 149, 155 (Ind. Ct. App. 2000), *adopted on trans.*, 761 N.E.2d 398 (Ind.

2002). In short, we find that the trial court took sufficient corrective action in admonishing the jury and therefore did not abuse its discretion in declining to sua sponte declare a mistrial.

## C. Fundamental Error

Finally, Aljarah asks that we review the issue for fundamental error. "[T]o constitute fundamental error, an error must be blatant and the potential harm must be so substantial and apparent that to ignore it would clearly constitute a denial of due process." *Owens v. State*, 937 N.E.2d 880, 885 (Ind. Ct. App. 2010) (citations and quotation marks omitted), *trans. denied* (2011).

> The mere fact that error occurred and that it was prejudicial will not suffice. That, after all, is the ordinary rule for reversal on appeal when the contemporaneous objection has been made. Rather[,] the error must be one such that the defendant could not possibly have had a fair trial or such that this court is left with the conviction that the verdict or sentence is clearly wrong or of such dubious validity that justice cannot permit it to stand.

*Id*. (citation and quotation marks omitted). In other words, the defendant must demonstrate that the error subjected him to grave peril and had a probable persuasive effect on the jury. *Vanzandt v. State*, 731 N.E.2d 450, 454 (Ind. Ct. App. 2000), *trans. denied*. In assessing the probable persuasive effect on the jury, we consider the stricken statement in the context of all of the evidence presented at trial. *Warren v. State*, 757 N.E.2d 995, 999 (Ind. 2001).

Here, Alfartusi stated that Aljarah had once tried to kill another friend. This statement came out in response to the trial judge's request for clarification. Aljarah argues that because it was the trial judge, rather than counsel, who asked the question, the jury likely placed more import upon it. We disagree and find that the context is crucial. Alfartusi had very limited English proficiency, and his testimony was often difficult to understand. This prompted the

trial judge to interrupt during Alfartusi's direct- and cross-examination to clarify some of his responses for the record. In so doing, the trial judge was acting as a facilitator, not an advocate, and was merely ensuring that the jurors could understand Alfartusi's testimony. Specifically, he asked Alfartusi to "go back and clarify the answer" and to speak "[s]lower so that we can understand it." Tr. at 116. When Alfartusi eventually clarified his answer, it amounted to evidence of a prior bad act, and the trial court acted promptly both in conducting the bench conference and in admonishing the jury thereafter. After this admonishment, the issue was never raised again at trial.

In sum, we find that Alfartusi's statement was isolated, cured by admonishment, and overshadowed by overwhelming evidence of Aljarah's guilt via Alfartusi's unequivocal testimony identifying Aljarah as his shooter, surveillance video of Aljarah's vehicle as it sped away, and Aljarah's ex-girlfriend's testimony concerning Aljarah's anger toward Alfartusi. Based on the foregoing, we find no error, fundamental or otherwise, in the trial court's handling of Alfartusi's statement. Accordingly, we affirm.

Affirmed.

VAIDIK, J., and BRADFORD, J., concur.