## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 16 2018, 10:14 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark K. Leeman
Leeman Law Office
Logansport, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Henry A. Flores, Jr.
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Robert Ryan Fleming, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | July 16, 2018 <br><br> Court of Appeals Case No. <br> 09A05-1712-CR-2813 <br><br> Appeal from the Cass Superior Court <br><br> The Honorable Richard A. Maughmer, Judge <br><br> Trial Court Cause No. <br> 09D02-1702-F5-16 |

**Bailey, Judge.**

# Case Summary

Robert Ryan Fleming ("Fleming") appeals his conviction for Battery Resulting in Bodily Injury to a Public Safety Officer, a Level 5 felony,[1] and his adjudication as a habitual offender.[2] We affirm.

# Issues

Fleming presents three issues for review, which we have restated as follows:

    I.      Whether Fleming was entitled to a declaration of a mistrial and a new trial for juror misconduct through inattentiveness;

    II.    Whether Fleming was entitled to a mistrial for prosecutorial misconduct; and

    III.   Whether sufficient evidence supports his battery conviction.

# Facts and Procedural History

On February 8, 2017, Fleming was being booked into the Cass County Jail[3] and was asked to provide a medical history. His responses to certain questions caused Shift Supervisor Steve Taylor ("Officer Taylor") to treat Fleming as a

---

[1] Ind. Code § 35-42-2-1(c)(1); (g)(5)(A).

[2] I.C. § 35-50-2-8.

[3] The record does not reveal the reason for Fleming's incarceration.

suicide risk. Officer Jeffrey Harness ("Officer Harness") took Fleming by the arm and escorted him to a padded cell.

[4] Once inside the cell, Fleming was told to remove his clothing and hand the items back through a food slot. Rather than remove his clothing, Fleming flung his arms and insisted that he was not suicidal. Officer Harness and other officers entered the padded cell to "get compliance" from Fleming. (Tr. at 86.) Fleming grabbed Officer Taylor's face. Officer Todd Cain ("Officer Cain") deployed his taser and Fleming was taken to the ground and subdued. Officer Harness observed blood on Officer Taylor's face; he had been scratched.

[5] On February 15, 2017, the State charged Fleming with Battery Resulting in Bodily Injury to a Public Safety Officer. On April 17, 2017, the State alleged Fleming to be a habitual offender. In bifurcated proceedings, a jury found Fleming guilty of the charge against him and adjudicated him a habitual offender. On November 6, 2017, the trial court imposed a sentence of three years imprisonment, enhanced by six years due to Fleming's status as a habitual offender. Fleming now appeals.

# Discussion and Decision

## Motion for Mistrial – Juror Inattentiveness

[6] The Cass County Jail was equipped with recording equipment that captured the events inside the padded cell. During his testimony, Officer Taylor described events based upon his recollection and with reference to the recording. During

the testimony, and apparently as the recording was playing, defense counsel brought it to the trial court's attention that there "may [be] a sleeping juror." (Tr. at 125.) The matter was summarily resolved with defense counsel saying, "I think we're fine" and the trial court advising the jurors to stand up if they desired. (Tr. at 125.)

[7] When the evidentiary part of the guilt phase of trial concluded, the jurors retired to deliberate. During deliberations, the jury notified the trial court that it wished to review the jail recording. The State and the defense agreed on what would be played for the jury and the jury was brought back into open court where the recording was played. The jury returned its verdict and the matter proceeded to the habitual offender phase.

[8] The trial court read instructions pertinent to the habitual offender phase and asked the parties if there were outstanding matters to be addressed. Defense counsel responded that he would like to make a "belated motion for a mistrial" based upon his having received post-verdict information that the episode of juror sleeping had not been an isolated event. (Tr. at 168.) Fleming was invited to present testimony in support of the allegation of juror inattentiveness and he called as a witness his mother, Carol Ramirez ("Ramirez"). Ramirez, who had been present during the entire guilt phase, reported that a juror fell asleep three times and only the first time had been mentioned in open court. She estimated that the juror napped for four minutes, two during the first episode and one in each of the other episodes. She was uncertain what was being presented during

the first nap but recalled that the jury was "looking at the video" during the second and third naps. (Tr. at 175.)

[9] The trial court denied the motion for a mistrial, finding the motion to be untimely and that there had been no showing of prejudice to Fleming. Generally, the trial court's denial of a motion for mistrial is to be reviewed by application of the following considerations:

> Because the trial court is in the best position to evaluate the relevant circumstances of an event and its impact on the jury, the trial court's determination of whether to grant a mistrial is afforded great deference on appeal. To succeed on appeal from the denial of a motion for mistrial, the appellant must demonstrate the statement or conduct in question was so prejudicial and inflammatory that he was placed in a position of grave peril to which he should not have been subjected. Mistrial is an extreme remedy invoked only when no other measure can rectify the perilous situation. We determine the gravity of the peril based upon the probable persuasive effect of the misconduct on the jury's decision rather than upon the degree of impropriety of the conduct. Moreover, reversible error is seldom found when the trial court has admonished the jury to disregard a statement made during the proceedings.

*Warren v. State*, 757 N.E.2d 995, 998 (Ind. 2001). Here, we are concerned not with a statement or conduct improperly introduced to the jury but rather with "juror misconduct through inattentiveness." *Id.* at 1001. Fleming argues that he was "denied his right to fair trial by an impartial jury," and that the "structural error" is not "subject to harmless error review." Appellant's Brief at 11.

[10]     In *Warren*, the appellant likewise contended that a sleeping juror violated his rights to a fair trial and trial by jury. 757 N.E.2d at 1001. After his conviction, Warren made a motion to correct error, supported by an affidavit from one juror averring that she had observed another juror fall asleep on multiple occasions and had nudged him with her arm or knee to wake him. The trial court denied the motion to correct error and Warren appealed. *See id.*

[11]     Our Indiana Supreme Court observed, "[t]o prevail on a claim of juror misconduct through inattentiveness, the defendant must demonstrate that the juror was actually inattentive and that the juror's inattention resulted in actual prejudice." *Id.* The trial court had made certain findings – that no specific times or length of sleep were indicated, another juror awakened the sleeper, the court had noticed inattentiveness only once during a bench conference, defense counsel and the defendant had not noticed inattentiveness, and the issue had not been raised during trial. *Id.* The Court determined that these findings were supported by the record, and found no abuse of discretion in the denial of the motion to correct error. *Id.*

[12]     Here, the juror was alleged to have slept for four minutes, a relatively brief time. However, it was also alleged that the juror slept for two minutes during which a material and potentially exculpatory recording was played. The trial court did not make a factual finding as to whether the juror slept; rather, the trial court rested its ruling upon untimeliness and lack of prejudice.

[13] Fleming insists that it is "especially unfair" to require him to prove prejudice because courts are unable to look into the minds of jurors. Appellant's Brief at 13. But it was not necessary for the trial court to do so in this case. During deliberations, the jury asked to view the recording a second time and the jurors were brought into open court to observe the relevant portion as agreed upon by both parties. This had been accomplished before the trial court was asked to grant a mistrial, and Fleming did not contend that the juror was inattentive or sleeping during this second showing. In the absence of a showing of prejudice, Fleming cannot prevail on his claim that juror misconduct by inattentiveness entitled him to a new trial.

## Motion for Mistrial – Prosecutorial Misconduct

[14] During the prosecutor's opening statement in the habitual offender phase, the following commentary and response ensued:

> Prosecutor: Now, you may have heard of three strikes and you're out laws. I want to tell you right now that that's not the law in the State of Indiana. Jurors are sometimes afraid that if they convict somebody of being a habitual offender, that means they're going to go to prison for life, life without parole or something like that. That's not the case. It changes the range of potential sentence, but life without parole or life in prison is not something we're talking about.

> Defense Counsel: Your Honor, I'm going to object to this.

> Court: Sustained, sustained.

(Tr. at 183.) The prosecutor then advised the jury that sentencing was the court's task and continued opening argument to its conclusion. Thereafter, defense counsel moved for a mistrial, arguing:

> Because here's the thing. I don't want to be Mr. Cliché man here, but we have the whole un-ring the bell thing. Basically Mr. Schafer told the jury that "hey, don't worry, you're not sending away this guy for life" or strongly implied that when you're making this deliberation and in spite of the objection sustaining [sic], you can't undo that statement and I simply waited for him to finish his closing and then approached the bench before we started presenting evidence so I could put that on the record. I, I wasn't trying to be delaying. But I just, I just think that I don't [know] how in the world you can get around even with a limiting instruction once you, once the jury hears and perceives "it's okay. You're not really throwing this guy away lock and key. There's a light at the end of the tunnel." That's, that's a huge concern for us, Your Honor.

(Tr. at 212.) The prosecutor argued that "three strikes and you're out" was a legitimate juror concern. (Tr. at 212.) The trial court denied the motion for a mistrial.

On appeal, Fleming argues that the prosecutor committed misconduct that placed him in grave peril by "inappropriately interject[ing] the issue of duration of punishment" to encourage the jury to adjudicate Fleming a habitual offender. Appellant's Brief at 16. He claims that he was deprived of the

opportunity to argue that a habitual offender adjudication would be unduly harsh in hopes that the jury would engage in jury nullification.[4]

[17] As previously observed, "to succeed on appeal from the denial of a motion for mistrial, the appellant must demonstrate the statement or conduct in question was so prejudicial and inflammatory that he was placed in a position of grave peril to which he should not have been subjected." *Warren*, 757 N.E.2d at 998. In reviewing a properly preserved claim of prosecutorial misconduct, the Court must determine: (1) whether the prosecutor engaged in misconduct and (2) whether the misconduct, under all the circumstances, placed the defendant in a position of grave peril to which he or she should not have been subjected. *Booher v. State*, 773 N.E.2d 814, 817 (Ind. 2002).

[18] The State points out that Fleming did not identify to the trial court any grounds for his contemporaneous objection and belatedly moved for a mistrial; he then presented argument but made no request for an admonition to the jury. "A party's failure to present a contemporaneous trial objection asserting prosecutorial misconduct preludes appellate review of the claim." *Id.* The default may be avoided if the prosecutorial misconduct amounts to fundamental error; as such, the appellant must establish both misconduct and fundamental error. *Id.* at 817-18. For prosecutorial misconduct to constitute

---

[4] Jury nullification has been described as "power to acquit a defendant despite evidence and judicial instructions to the contrary." *Holden v. State*, 788 N.E.2d 1253, 1254 (Ind. 2003). The Court clarified that power to ignore judicial instructions is not equivalent to a right to disregard the law. *Id.*

fundamental error, it must "make a fair trial impossible or constitute clearly blatant violations of basic and elementary principles of due process and present an undeniable and substantial potential for harm." *Id.* at 817.

[19] Here, the prosecutor's comments, even if considered misconduct, do not amount to fundamental error. Advising the jury that Fleming would not spend life in prison upon adjudication as a habitual offender does not rise to the level of egregiousness at issue in the cases cited by Fleming. *See Dailey v. State*, 406 N.E.2d 1172, 1174 (Ind. 1980) (argument presented that thirty-to-sixty years was effectively only fifteen-to-thirty years with good time credit); *Feggins v. State*, 359 N.E.2d 517, 523 (1977) (recognizing danger to be avoided is that the jury, informed of the possibility of factors that could diminish the defendant's sentence, will convict of a more serious offense than that which they actually believe him to be guilty of, in order to provide a penalty which they consider more appropriate); and *Rowe v. State*, 237 N.E.2d 576 (Ind. 1968) (prosecutor argued to the jury that if the defendant were convicted of manslaughter instead of murder, he could be paroled in two years).

[20] Finally, the prosecutor's commentary did not preclude Fleming from arguing that, pursuant to the Indiana Constitution, Article 1, Section 19, jurors are permitted to determine the law as well as the facts. The trial court instructed the jury, in a preliminary instruction and a final instruction for the habitual offender phase, that the jury was to determine both the law and the facts, according to the Indiana Constitution. Fleming has not demonstrated his entitlement to a mistrial.

# Sufficiency of the Evidence

[21]   When reviewing a claim of insufficient evidence, we neither reweigh the evidence nor assess the credibility of witnesses. *Bell v. State*, 31 N.E.3d 495, 499 (Ind. 2015). We will affirm a conviction if there is probative evidence and reasonable inferences drawn therefrom from which a reasonable fact-finder could have found the defendant guilty beyond a reasonable doubt. *Id.*

[22]   To convict Fleming of Battery, as a Level 5 felony, as charged, the State was required to establish beyond a reasonable doubt that Fleming knowingly or intentionally touched Officer Taylor in a rude, insolent, or angry manner and the offense resulted in bodily injury to Officer Taylor while he was engaged in his official duties. I.C. § 35-42-2-1(c)(1); (g)(5)(A). Fleming claims that the State failed to establish that he acted with the requisite mens rea, knowingly or intentionally.

[23]   Indiana Code Section 35-41-2-2 provides in relevant part:

> (a) A person engages in conduct "intentionally" if, when he engages in the conduct, it is his conscious objective to do so.
>
> (b) A person engages in conduct "knowingly" if, when he engages in the conduct, he is aware of a high probability that he is doing so.
>
> (c) ***
>
> (d) Unless the statute defining the offense provides otherwise, if a kind of culpability is required from commission of an offense,

it is required with respect to every material element of the prohibited conduct.

[24] Fleming directs our attention to the recording made inside the padded cell, which he describes as irrefutable evidence that the scratching of Officer Taylor's face occurred as Fleming's muscles tensed in response to the taser. The State responds that Fleming need only have intended the touching and not the resultant injury. We agree with the State. "The culpability requirement [of I.C. § 35-42-2-1] applies to the conduct prohibited by the statute, not to the result of that conduct." *Lowden v. State*, 51 N.E.3d 1220, 1223 (Ind. Ct. App. 2016).

[25] The conduct prohibited by the battery statute is touching in a rude, insolent, or angry manner. Officer Cain testified that Fleming was agitated and grabbed Officer Taylor's face before Officer Cain warned "taser, taser" and deployed the taser. (Tr. at 98.) Thus, the evidence favorable to the judgment is that Fleming touched Officer Taylor before the taser was employed. Sufficient evidence supports Fleming's conviction.

# Conclusion

[26] Fleming did not demonstrate his entitlement to a mistrial. Sufficient evidence supports his conviction of Battery Resulting in Bodily Injury to a Public Safety Officer.

[27] Affirmed.

Crone, J., and Brown, J., concur.