## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 28 2020, 10:49 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jennifer L. Koethe
Navarre, Florida

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Benjamin J. Shoptaw
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Ladon E. Cameron,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff*

December 28, 2020

Court of Appeals Case No.
20A-CR-993

Appeal from the LaPorte Circuit Court

The Honorable Thomas Alevizos, Judge

Trial Court Cause No.
46C01-1608-F4-779

**May, Judge.**

Ladon E. Cameron appeals his convictions of one count of Level 4 felony dealing in cocaine or a narcotic drug[1] and two counts Level 5 felony dealing in cocaine or a narcotic drug.[2] He presents two issues for our review, which we restate as:

1. Whether the State presented sufficient evidence to support his convictions; and

2. Whether the trial court abused its discretion when it denied his motion for mistrial.

We affirm.

# Facts and Procedural History

On August 24, 2016, Cameron called Dorothy Dunham to drive him to a nearby CVS pharmacy. Once they arrived at the CVS, Cameron used the Money Gram machine to send $160 to someone. Dunham drove Cameron back home, and Cameron told her that he would need a ride to Chicago soon. Unbeknown to Cameron, Dunham was working as a paid confidential informant for the Michigan City Police in LaPorte County. Dunham reported her encounter with Cameron to Detective Donald Hicks of the Michigan City Police Department.

---

[1] Ind. Code § 35-48-4-1(b).

[2] Ind. Code § 35-48-4-1(a).

[3]     The next day, Cameron called Dunham and told her he needed a ride to Chicago that day. Dunham called Detective Hicks, but there was not enough time to meet with him or allow him to search her vehicle pursuant to normal confidential informant protocol before Cameron wanted to leave. Dunham picked up Cameron at his residence. Cameron entered the vehicle with a gun and a "big, white, portable" speaker. (Tr. Vol. II at 117.) Cameron told Dunham that she would receive cocaine and heroin in exchange for driving him to Chicago.

[4]     Dunham texted Detective Hicks two or three times on the way to Chicago. Cameron navigated Dunham to apartments in Chicago where she parked and Cameron got out of the vehicle. Dunham texted Detective Hicks while she waited for Cameron to return. When Cameron returned to the vehicle, he removed a bag of drugs from his pants and placed it inside the speaker. Dunham then drove Cameron back to LaPorte County.

[5]     Dunham texted Detective Hicks on the way back. Cameron asked Dunham to stop at an apartment complex in LaPorte County. Cameron exited the vehicle, taking the speaker with him. He returned to the vehicle with the speaker and asked Dunham to take him back to his residence. On their way to Cameron's residence, Cameron gave Dunham "two or three twenty-dollar bags of cocaine, and one twenty-[dollar] bag of heroin[,]" which she hid in her bra. (*Id.* at 134.)

[6]     When they arrived at Cameron's residence, police "swarmed" Dunham's vehicle and threw a "flash grenade" at it. (*Id.* at 133.) Cameron and Dunham

exited the vehicle and were placed in handcuffs. Dunham told officers she had drugs in her bra and gave the drugs and her bra to officers. She also told officers that there were "drugs inside of a white speaker" in her vehicle. (*Id.* at 48.) Police searched Dunham's vehicle and found a white speaker with "a clear plastic bag that contained twenty smaller bags tied in a knot, contained what appeared to be crack cocaine . . . [and] twelve small bags tied in a knot containing a gray substance, rock-like material that was consistent with the appearance of heroin." (*Id.*) Police later questioned Cameron, who confirmed he had asked Dunham to take him to Chicago; however, the reason for his visit to Chicago changed many times during the interview.

[7] On August 26, 2016, the State charged Cameron with two counts of Level 4 felony dealing in cocaine or a narcotic drug and two counts of Level 5 dealing in cocaine or a narcotic drug. Prior to trial, Cameron filed a motion in limine that sought to exclude "[a]ny evidence or testimony of Defendant having previously, or on the day in question, possessed a firearm" and "[a]ny and all statements, evidence or admissions by Defendant to having smoked marijuana on a daily basis." (App. Vol. II at 116.) The trial court granted this motion in limine. Prior to trial, the State dismissed one count of Level 4 felony dealing in cocaine or narcotic drug.

[8] On March 2 and 3, 2020, the trial court held a jury trial. During trial, the State asked Dunham if Cameron had anything else with him when he entered her vehicle for their trip to Chicago. Dunham testified, "he had his gun with him." (Tr. Vol. II at 118.) Cameron objected, arguing that the mention of the gun

violated the motion in limine, but the trial court overruled his objection. During the testimony of Detective Willie Henderson, the State asked Detective Henderson why he and other officers approached Dunham's vehicle and threw a flashbang grenade into it to apprehend Cameron. Detective Henderson testified they did so because "Ms. Dunham indicated that Mr. Cameron had a firearm on him when they left toward Chicago[.]" (*Id.* at 194.) Cameron objected, arguing the statement violated the motion in limine. After a sidebar outside the presence of the jury, the trial court sustained Cameron's objection and told the jury, "please ig – ignore Detective Henderson's mention of a gun." (*Id.* at 198.)

[9] The State also asked Detective Henderson if "[d]uring [the] interview, did you ask Mr. Cameron if he was a drug user himself" to which Detective Henderson replied he did. (*Id.* at 213.) Cameron objected, arguing the questioning violated the motion in limine because the question suggested Cameron used marijuana on a daily basis. The trial court sustained the objection and told the State to be more specific in its question. The State rephrased its question to specifically ask whether Cameron told Detective Henderson that Cameron "used, in any fashion, any controlled substances, such as which were found in the speaker, i.e. heroin and cocaine" to which Detective Henderson indicated he did not. (*Id.* at 215.)

[10] After the State rested its case, Cameron moved for a mistrial based on the alleged violations of the motion in limine. The trial court denied the motion for mistrial. The jury subsequently returned a guilty verdict on all three counts,

and the trial court entered convictions on those counts. On April 3, 2020, the trial court sentenced Cameron to six years for the Level 4 felony and three years each for the Level 5 felonies, and the court ordered the sentences be served concurrently, for an aggregate sentence of six years.

# Discussion and Decision

## 1. Sufficiency of the Evidence

[11] When reviewing sufficiency of the evidence to support a conviction, we consider only the probative evidence and reasonable inferences supporting the trial court's decision. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). It is the fact-finder's role, and not ours, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. *Id*. To preserve this structure, when we are confronted with conflicting evidence, we consider it most favorably to the trial court's ruling. *Id*. We affirm a conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id*. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence; rather, the evidence is sufficient if an inference reasonably may be drawn from it to support the trial court's decision. *Id*. at 147. A conviction "may be based purely on circumstantial evidence." *Moore v. State*, 652 N.E.2d 53, 55 (Ind. 1995), *reh'g denied*.

[12] To prove Cameron committed Level 5 felony dealing in cocaine or a narcotic drug, the State had to prove that Cameron knowingly or intentionally delivered

heroin and cocaine. *See* Ind. Code § 35-48-4-1(a) (elements of crime); (*see also* App. Vol. II at 22 (charging information)). To prove Cameron committed Level 4 felony dealing in cocaine, the State had to prove that Cameron knowingly or intentionally possessed with intent to deliver "at least one (1) gram but less than five (5) grams" of cocaine. *See* Ind. Code § 35-48-4-1(b) (elements of crime); (*see also* App. Vol. II at 21 (charging information)). Cameron argues the State did not present sufficient evidence he committed the crimes of which he was convicted because Dunham was a confidential informant and "was hopeful that her co-operation would help if she filed a Petition to Modify her sentence." (Br. of Appellant at 16.)

[13] The State presented evidence that Dunham drove Cameron to Chicago. She testified Cameron had a white speaker with him when he entered her vehicle. When Dunham and Cameron arrived in Chicago, Cameron exited the vehicle and returned shortly thereafter. He took a bag of drugs from his pants and placed it in the speaker. When Dunham and Cameron returned to LaPorte County, Cameron exited the vehicle at an apartment complex and took the speaker with him. He returned with the speaker and gave Dunham drugs, which she stored in her bra. When Cameron and Dunham were apprehended at Cameron's residence, Dunham had drugs in her bra and police found cocaine and heroin in the speaker. When interviewed by police, Cameron admitted Dunham drove him to Chicago, but his story regarding the purpose of the trip changed multiple times. Cameron's argument is an invitation for us to reweigh the evidence and judge the credibility of witnesses, which we cannot do. *See*

*Drane*, 867 N.E.2d at 146 (appellate court cannot reweigh evidence or judge the credibility of witnesses). The evidence was sufficient to support Cameron's convictions. *See, e.g., Mullins v. State*, 504 N.E.2d 570, 574 (Ind. 1987) (testimony from informant and corroborating evidence sufficient to prove Mullins committed dealing in a narcotic drug).

## 2. Motion for Mistrial

Our standard of review regarding a motion for mistrial is well-settled:

> The decision on a motion for mistrial lies within the discretion of the trial court. A mistrial is an extreme remedy and required only when no other method can rectify the situation. A prompt admonishment advising the jury to disregard the improper testimony is usually enough to avoid a mistrial. Failure to grant a mistrial may not be asserted on appeal where an admonishment is accepted without further objection or claim that it is insufficient.

*TRW Vehicle Safety Sys., Inc. v. Moore*, 936 N.E.2d 201, 213 (Ind. 2010) (internal citations and quotation marks omitted). Furthermore, we have noted:

> "On appeal, the trial judge's discretion in determining whether to grant a mistrial is afforded great deference because the judge is in the best position to gauge the surrounding circumstances of an event and its impact on the jury." *McManus v. State*, 814 N.E.2d 253, 260 (Ind. 2004), *cert. denied*, 546 U.S. 831, 126 S. Ct. 53, 163 L.Ed.2d 83 (2005). "When determining whether a mistrial is warranted, we consider whether the defendant was placed in a position of grave peril to which he should not have been subjected; the gravity of the peril is determined by the probable persuasive effect on the jury's decision." *James v. State*, 613 N.E.2d 15, 22 (Ind. 1993). "'[R]eversible error is seldom found

when the trial court has admonished the jury to disregard a statement made during the proceedings.'" *Warren v. State*, 757 N.E.2d 995, 999 (Ind. 2001) (quoting *Bradley v. State*, 649 N.E.2d 100, 108 (Ind. 1995)).

*Owens v. State*, 937 N.E.2d 880, 895 (Ind. Ct. App. 2010), *reh'g denied*, *trans. denied*.

[15] Here, Cameron objected to three instances of testimony that he claimed violated the motion in limine – Dunham's testimony that he had a gun, which the trial court overruled; Detective Henderson's testimony that he and officers employed a flash grenade when approaching Dunham's vehicle because Dunham had indicated Cameron had a gun, which the trial court sustained and admonished the jury to disregard; and Detective Henderson's testimony that he asked Cameron if Cameron used any drugs, which the trial court sustained, and asked the State to rephrase the question. At the end of the State's presentation of evidence, Cameron moved for a mistrial based on the three instances implicating the motion in limine. The trial court denied Cameron's motion for a mistrial. Cameron argues the trial court abused its discretion in doing so because "the questions asked by the State and prohibited by the Motion in Limine were so inflammatory and prejudicial that Mr. Cameron was placed in grave peril." (Br. of Appellant at 14.)

[16] We cannot agree. As discussed *supra*, there was sufficient evidence to prove that Cameron committed Level 4 and Level 5 felony dealing in a narcotic drug or cocaine based on Dunham's testimony of the events that took place when

she transported him to and from Chicago. The gun was mentioned twice –
when Dunham responded to a question regarding what Cameron possessed
when he entered her vehicle and when Detective Henderson responded to a
question regarding why officers used a certain level of force when apprehending
Cameron. Both of the instances of testimony were brief and, even when
Cameron's objection to Dunham's testimony was overruled, the State did not
pursue a line of questioning that would elicit additional testimony about
Cameron's firearm possession.[3]

[17]     Additionally, when the State asked Detective Henderson if Cameron had
indicated during the interview that Cameron used drugs, before Detective
Henderson could relay Cameron's answer, Cameron objected because the
motion in limine prohibited questions regarding Cameron's daily marijuana
use. The trial court sustained the objection and noted the question was "over
broad" and asked the State to "be more specific" in its question because "what
is relevant, is these two drugs[.]" (Tr. Vol. II at 214.) The State then rephrased
the question to ask if Cameron had indicated he used heroin or cocaine, to
which Detective Henderson answered in the negative. Again, the violation of

---

[3] While the State did not pursue a line of questioning following the objection, their questions prior to the
objection were broad, as to allow for the witness to testify regarding the issues prohibited by the motion in
limine. For example, after Dunham told the State that Cameron entered her car with a "big, white, portable
speaker" the State then asked "do you see him with anything else[,]" knowing the only other thing Cameron
was carrying that day was a gun, which was the subject of a motion in limine. (Tr. Vol. II at 116-7.) Asking
such broad questions when an order in limine is in place such as in this case is fraught with peril and raises a
high likelihood that a witnesses answers will violate the court's order in limine. We would hope counsel for
the State learned from this experience and we direct counsel to avoid such broad questions under similar
circumstances in the future.

the motion in limine here was brief, and Detective Henderson did not have an opportunity to answer the first overbroad question that may have included testimony regarding Cameron's daily marijuana use in violation of the motion in limine. The State's follow up question focused on the drugs involved in the case and Detective Henderson testified that Cameron did not say Cameron used cocaine or heroin.

[18] All three instances were brief, and the trial court took corrective action in two of them, forcing the State to redirect questioning once. Further, there existed overwhelming evidence to prove Cameron committed the crimes for which he was convicted. Therefore, we conclude the trial court did not abuse its discretion when it denied Cameron's motion for mistrial. *See Lucio v. State*, 907 N.E.2d 1008, 1011 (Ind. 2009) (trial court's denial of motion for mistrial not an abuse of discretion when statement was fleeting and only a minor part of the evidence and the trial court promptly admonished the jury to disregard the statement).

# Conclusion

[19] We hold the trial court did not abuse its discretion when it denied Cameron's motion for mistrial. Additionally, the State presented sufficient evidence Cameron committed the crimes of which he was convicted. Accordingly, we affirm.

[20] Affirmed.

Kirsch, J., and Bradford, C.J., concur.